IN THE

# APPELLATE COURT

OF THE

## STATE OF INDIANA,

AT INDIANAPOLIS, NOVEMBER TERM, 1900, AND MAY TERM,
1901, IN THE EIGHTY-FIFTH YEAR OF THE STATE.

---

LAKE ERIE AND WESTERN RAILROAD COMPANY *v.*
GAUGHAN.

[No. 3,242. Filed December 19, 1900.]

RAILROADS.—*Master and Servant.—Negligence.—Personal Injuries.*—
A railroad company is not liable for personal injuries sustained by
the employe of a manufacturing company who, while employed
by the latter company in loading a car, was injured by reason of a
switch engine of the railroad company starting in motion cars
which struck the car the employe was loading, where the railroad
company in the operation of its switch engine was under the direc-
tion and control of the manufacturing company.

From the Henry Circuit Court. *Reversed.*

*J. B. Cockrum, E. H. Bundy, W. A. Brown* and *W. E.
Hackedorn,* for appellant.

*N. N. Spence, C. A. Taughinbaugh, D. Chambers* and *P.
D. Smith,* for appellee.

HENLEY, C. J.—This was an action for damages grow-
ing out of an injury received by appellee and which oc-
curred in the manner following: Appellant and the Muncie

Belt Railway Company each owned a belt line of railroad around the city of Muncie which they used for transacting the freight business of a number of factories. One of these lines runs near a factory known as the Midland Steel Company, a manufacturing corporation operating a large plant near said city of Muncie. The buildings and grounds of this company are surrounded by a high fence and within this enclosure is a switch track connecting at the edge of the said company's grounds with the belt lines heretofore spoken of. At the point where the switch track enters said steel company's grounds and connects with the belt lines, there is a gate. The switch track leads from this gate through the grounds of said steel company along the side of one of the buildings of said company, and along and near to and parallel with a certain platform built by said company for the purpose of loading and unloading cars. The roof of the building extends over this platform, and for the purpose of supporting the roof there are wooden posts four by six inches and standing sixteen feet apart. At a point in the switch track about 160 feet from this platform toward the gate are the scales used for the purpose of weighing cars by the railroad companies. From these scales the grade of the track gradually descends toward the platform. The business of the Midland Steel Company was transacted as follows: Each railway line doing business with the said company had a switch train and crew operating on the belt lines. The switch engine would come to the gate of the Midland Steel Company and notify said company of its readiness to come into said yards to do whatever business they might wish done. In response to such notification or signal, the Midland Steel Company would come to the gate, unlock it and the engine would pass through and onto the switch track and transact whatever business said company might have, and pass out, and the gate would then be closed and locked by said steel company. Appellant's engine could not get on the switch track without the knowledge and permission of the Midland Steel Company. Appellee was an em-

ploye of the Midland Steel Company and was engaged with others in loading a car which stood on the switch track at the platform. For the purpose of facilitating the business of said company a heavy iron plate was used to reach from the platform to the car floor and over this plate the servants of said steel company would pass in loading the cars. The end of this steel plate which rested upon a platform had, in passing over it, become misplaced, and appellee, while standing upon the platform stooping over replacing the steel plate in its proper position, received the injury of which he complains. While he was stooping down lifting the plate, three cars ran down the track from near the scales, bumped against the car which was being loaded and started it forward so that appellee's foot was caught between the edge of the iron plate and one of the upright posts supporting the platform roof, and severely injuring him. The cars, which bumped against the car at the platform, were cars which had been standing on the switch track near the scales and were set in motion by a jar given them by being run against by the switch engine and the attached cars for the purpose of coupling these cars to the cars already attached to the switch engine, and removing them from the said steel company's yards. The coupling failed to work when the cars came together, causing the cars to start and run down the track and against the car standing at the platform where appellee was at work.

The complaint is based upon the negligence of the appellant in running its locomotive while within the steel company's yard. In the language of appellee's complaint, the acts constituting negligence are stated in the following words: "Plaintiff further alleges that the proximate causes of plaintiff's injury and wounds were and are due to defendant's negligent acts, to wit, swiftly running and backing said train without any warning or notice to plaintiff and negligently and unnecessarily hitting, striking, and moving and violently hurling forward the car on which plaintiff was attempting to place said heavy iron plate and thereby sud-

denly and violently moving and hurling forward said plate as aforesaid." There was a verdict and judgment in favor of appellee. With the general verdict the jury returned answers to interrogatories submitted to them. Counsel for appellant contend that the findings of fact are irreconcilably in conflict with the general verdict.

It was necessary for the complaint to show in this case a legal duty or obligation of the appellant towards the appellee existing at the time and place of the injury, which the appellant failed to perform, and that appellee's injury was occasioned by such failure. This appellee did in the language of the complaint above quoted. Appellee was not in the employ of the appellant. He was not engaged in the work he was doing, at the time he received his injury, by the direction, invitation, permission, or with the knowledge of appellant, nor was he in any way subject to the orders of appellant. Appellant was on premises owned and controlled by appellee's master. Appellant could only be there by permission and consent of appellee's master. The entry was by a gate which was kept closed and locked and each entry of appellant required the active permission of appellee's master in unlocking the gate. While within the gates, appellant was under the orders of the Midland Steel Company and did whatever work said company desired done, in bringing in, removing, or placing cars. Appellant, if liable at all for the injury to appellee, was so liable because of its negligence in manner and form as stated in appellee's complaint.

The jury found that the appellant's employes attempted to couple the train to the section of three cars, which ran down upon the car and caused appellee's injury, in the usual and ordinary way of coupling cars with automatic couplers. That they had no notice or knowledge of the fact that appellee was working in the car at the platform, and that the appellant's said employes did not intend to push said cars down against the cars where appellee was at work. That the cars were equipped with automatic coup-

lers.   The cars ran down and struck the car at the platform from the force of the jar given them in the attempt to couple.   They were not pushed by or attached to the engine in any way.   Under the averments of the complaint in this case, the duty did not devolve upon the appellant to examine the premises of the Midland Steel Company and notify said company's employes that an accident might occur from the usual and ordinary manner of moving cars from the said company's yard.

It was not the fault of appellant if appellee's master did not furnish him a safe and suitable place in which to work. Appellant was doing the work under the direction of appellee's master, and in the usual and ordinary way, using suitable and safe appliances, and in so doing it appellee was injured; he was injured not by the negligence of appellant, but because the position in which appellee was placed to work was rendered unsafe by the presence of appellant in the yard in the proper exercise of its rights there, under the permission and control of appellee's master.   It must follow then, that if in the prosecution of the work of handling the cars in the usual and proper way in the yards of the Midland Steel Company, the employes of said company are placed in more hazardous positions, the liability, if any, arising from the increased risk must fall upon said steel company.   This case is in all the material facts presented like the case of *McInerney* v. *Delaware, etc., Co.,* 151 N. Y. 411, 45 N. E. 848.

The negligent acts which appellee alleges caused his injury are squarely contradicted by the answers to interrogatories returned with the general verdict.   The facts found flatly contradict all the averments of negligence in appellee's complaint.   They show that appellant has not violated any alleged duty owing to appellee.   Appellant's motion for judgment ought to have been sustained.

Judgment reversed, with instructions to the lower court to sustain appellant's motion for judgment upon the facts found by way of answers to interrogatories.