FITZPATRICK *v.* MICHIGAN CENTRAL RAILROAD CO.

1. RAILROADS—PERSONAL INJURIES—PERSON WORKING ON CAR—CONTRIBUTORY NEGLIGENCE.

In an action against a railroad company for injury to a servant of a lumber company by moving without warning a car into which he was loading lumber, evidence examined, and *held*, to be a question for the jury whether plaintiff was negligent in pursuing his labor in reliance on receiving a customary warning from defendant's servants.

2. SAME—WARNING—FAILURE TO GIVE—NEGLIGENCE.

Where a railroad company's servants were required by its rules to give warning to persons working about cars before moving them, and it was customary to do so, a failure to give the customary warning before moving the cars was negligence.

3. MASTER AND SERVANT—NEGLIGENCE OF SERVANT—INJURIES TO THIRD PERSONS—LIABILITY OF MASTER.

A railroad company is liable for an injury to the servant of a lumber company caused by the negligence of train operatives while switching cars in the lumber company's yard, the lumber company having no control over the train operatives further than to inform them what switching was to be done.

Error to Bay; Collins, J. Submitted April 3, 1907. (Docket No. 4.) Decided July 13, 1907.

Case by Dennis Fitzpatrick against the Michigan Central Railroad Company for personal injuries. There was judgment for plaintiff, and defendant brings error. Affirmed.

*Cooley & Hewitt* (*Henry Russell* and *O. E. Butterfield*, of counsel), for appellant.

*De Vere Hall*, for appellee.

MONTGOMERY, J. This is an action to recover for personal injuries. The plaintiff was, on the 20th of Novem-

ber, 1903, engaged in inspecting and loading lumber from the mill of Mershon-Schuette-Parker Company into a car of defendant company. The cars of defendant were placed upon a spur track on the northerly side of the mill of plaintiff's employers, to whom the track belonged. The mill had eight doors on its northerly side, numbered consecutively, beginning at the westerly end. The mill floor was practically on a level with the floor of cars, so that when cars were placed with their doors opposite the doors of the mill lumber could be conveniently loaded from the mill to the cars. On the afternoon of the day in question plaintiff with a helper was engaged in loading lumber into a car opposite, which was the most easterly car, and the one farthest from the engine. The car was so placed that but 12 to 13 inches of space was left through which to shove the lumber, and this space was at the westerly side of the mill door. The plaintiff had finished placing in the car such lumber as it was intended to load into the car at the mill, with the exception of one board which he had occasion to have replaned. The conductor of defendant's train went into the mill to get his orders for switching from Mr. Shea, the foreman of plaintiff's employers. At this time plaintiff was awaiting the return of his helper with the replaned board. The conductor and Shea passed out through door No. 3, and through the car standing opposite. The conductor was directed to relocate the cars in order that the loading might be completed. No notice of the intended movement of the cars was given to plaintiff. The northerly door of the car into which plaintiff was loading was closed. When the conductor had passed through car No. 3, he notified the men working in the cars, and as he walked down the side of the cars on this spur track he shouted and waived his hand to those employés who were seen in the vicinity of the cars. Then on a signal from him the engine coupled onto the cars which stood on the spur from the westerly end thereof, and within a minute thereafter started to pull them out. Neither the con-

ductor nor any of the crew saw Fitzpatrick, and they afterwards learned that he was injured by this second movement of the cars. As the cars moved west, plaintiff was engaged in putting the last board in the car, and was caught between the car and the mill and severely injured.

There was some conflict in the testimony as to whether it was customary for the northerly car doors to be closed before the car was completely loaded. There was also some conflict upon the question of whether, when the trainmen found the northerly car door closed, it was customary for the trainmen to give any signal at that car. There was testimony on the part of plaintiff that the northerly door of cars was at times left closed while the loading was being done, and that when the door was so closed it was customary for the trainmen to give notice of the intended movement of the car by tapping on the door. There was also testimony tending to show that the trainmen had on previous occasions gone through the mill and given warning to the men that the cars were to be moved. The testimony was abundant that the trainmen were accustomed to notify the men engaged in loading, and were required to do so by the rules of the company. The conductor testified that the tapping of the engine bell couldn't be heard inside the mill on account of the noise of the machinery, and further testified as follows:

"*Q*. The only signal that you gave, that is, the Michigan Central employés give, would be the bell, wouldn't it?

"*A*. No, sir.

"*Q*. What other?

"*A*. I notified them when they were working.

"*Q*. Was your instructions to notify the men?

"*A*. Yes, sir.

"*Q*. You have instructions from the Michigan Central that before you pull a car out to notify the men?

"*A*. That is true.

"*Q*. That is, from your employer?

"*A*. Before we move cars where men are working we notify them.

" *Q.* Did you ?

" *A.* Yes, sir.

" *Q.* Did you notify them that day ?

" *A.* Yes, sir.

" *Q.* Did you notify Mr. Fitzpatrick ?

" *A.* I didn't see him.

" *Q.* Well, you didn't notify him ?

" *A.* No, sir."

On recross-examination, he said further:

"The instructions [were] before we move any cars, when men is working around. We don't handle the cars until we notify the men."

Under instructions, which in effect held defendant responsible for the acts and omissions of the trainmen on the occasion in question, and that it was a duty owed by defendant to the employés of Mershon-Schuette-Parker Company to give reasonable warning of the intended movement of the train, the plaintiff recovered, and defendant brings error, contending that plaintiff was guilty of contributory negligence, that there was no negligence in the management of the train, and that if there were negligence on the part of the train crew it was not negligence for which defendant was responsible.

We are not able to say that the plaintiff was guilty of contributory negligence, as matter of law. True, he knew that the cars were liable to be moved at any time, and that he was engaged in putting the last board into the car; but, if the testimony of plaintiff's witnesses be given credence, he also knew that it was the custom of the train crew to give notice to the employés, either by informing them directly by words, or by tapping on the door of the car at which they might be engaged, when the northern or outer door was closed. With a knowledge of this custom the plaintiff might reasonably be found by the jury to have been free of negligence while pursuing his labor, expecting to receive warning when warning became necessary. This case is clearly distinguishable from *Johnson* v. *Railway Co.*, 140 Mich. 292, cited by defendant's counsel. In that case plaintiff was violating a rule of his

employer, and knew that switching was going on at the time, and yet placed himself in a position of danger. In this case the custom had been to rely upon a warning. 2 Thompson on Negligence, § 1761.

Closely related to the question of contributory negligence and depending upon almost identical considerations is that of the negligence of defendant. The evidence shows that the defendant's train crew were accustomed to give warning to the men employed in and about the cars; that the instructions given them by their superiors required it. Clearly a failure to give the customary warning, which the mill employés might reasonably have expected, was a failure to discharge their duty and negligence. *Breeze v. Manufacturing Co.*, 140 Mich. 372; 2 Thompson on Negligence, supra.

Was the defendant responsible for the acts of its trainmen, or was their negligence, if any, to be imputed to Mershon-Schuette-Parker Company? The conductor of the train testified as follows:

" *Q.* The only instructions the foreman of the lumber company gives you is the instructions as to which cars to take out, is it not?

"*A.* Yes, sir.

" *Q.* And where to place them if they are not fully loaded?

"*A.* Yes, sir.

" *Q.* He gives you no further instructions at all, does he?

"*A.* No, sir.

" *Q.* You have the whole movement of the cars under your control, do you not?

"*A.* Yes, sir.

" *Q.* And you give the signals?

"*A.* I do.

" *Q.* That is, you and some other trainmen give the signals to the engineer?

"*A.* Yes, sir.

" *Q.* The engineer wouldn't have any authority to respect any signal that Mr. Shea gave, would he?

"*A.* Oh, no.

" *Q.* And he wouldn't respect it?

"*A.* No, sir.

"*Q.* And no person about the lumber company has any authority to direct the movement of the engine?

"*A.* No, sir.

"*Q.* Or of your cars?

"*A.* No, sir.

"*Q.* You move your cars there just the same in all particulars as you would on any switch track, do you not?

"*A.* Yes, sir.

"*Q.* And as you would on any main track?

"*A.* Yes, sir.

"*Q.* The question as to who owns the tracks you don't know anything about?

"*A.* I couldn't say."

Upon the question of respondeat superior the case is certainly as strong for the plaintiff as was *Joslin* v. *Ice Co.*, 50 Mich. 516, which the defendant seeks to distinguish. The case of *McInerney* v. *Canal Co.*, 151 N. Y. 411, cited by defendant's counsel, is not consistent with *Joslin* v. *Ice Co.*, supra. The latter case lays down no new rule, nor does it stand alone. The case of *Breeze* v. *Manufacturing Co.*, supra, fully supports plaintiff's contention in this case. In that case, answering the contention that MacKinnon Brothers were responsible for the negligence of the railroad company's employés on the ground that they were agents of MacKinnon Brothers, because switching cars in their yard, Mr. Justice HOOKER said:

"This claim cannot be sustained. The MacKinnon Company had no supervision or control over the railroad company, or its men. The company was an independent contractor, responsible for its own negligence."

See, also, 1 Thompson on Negligence, §§ 621, 646.

No error appearing, the judgment is affirmed.

CARPENTER, BLAIR, HOOKER, and MOORE, JJ., concurred.