## JACKSON *v.* DETROIT & MACKINAC RAILWAY CO.

1. RAILROADS — NEGLIGENCE — QUESTIONS OF LAW AND FACT — LIGHTS AND LOOKOUT.

   In an action for the death of the yardmaster of a railroad whose tracks were used by the defendant, evidence showing that the defendant's trains had been accustomed to carry a lookout and a light while backing up at night and that the neglect to follow such practice caused the death of plaintiff's decedent, justifies the submission of the case to the jury.

2. SAME—FELLOW-SERVANTS.

   The employés of such defendant railroad company were not his fellow-servants.

3. EVIDENCE—CROSS-EXAMINATION.

Reversible error is not made out by a ruling excluding cross-examination of a witness as to the character of the house he kept, where the witness answered the question to which objection was made.

4. SAME—HARMLESS ERROR.

Testimony that the rules of decedent's employer prohibited backing across highways without a light, and that a car with an engine would be farther away from the engineer than the front of an engine is harmless.

5. SAME—RELEVANCY—SURROUNDINGS.

Although the declaration did not count on any negligence in constructing a switch too close to the track, it was proper to show the distance from the switch to the track and that there would not be room for deceased to stand as it was claimed he did, and operate the lever in safety.

6. SAME—CONCLUSION.

Striking out a conclusion of the witness that the deceased would be safely situated was not error when the ground had been covered by showing the exact facts and situation.

7. NEW TRIAL—WEIGHT OF EVIDENCE.

The refusal of a new trial is not erroneous where a clear question of fact was presented by the testimony.

Error to Bay; Collins, J. Submitted February 25, 1910. (Docket No. 87.) Decided April 1, 1910.

Case by Ida Jackson, administratrix of the estate of Oscar F. Jackson, deceased, against the Detroit & Mackinac Railway Company for the negligent killing of plaintiff's intestate. A judgment for plaintiff is reviewed by defendant on writ of error. Affirmed.

*James McNamara* (*Weadock & Duffy*, of counsel), for appellant.

*De Vere Hall*, for appellee.

MONTGOMERY, C. J. The plaintiff's decedent, Oscar F. Jackson, was employed by the Pere Marquette Railroad Company in Bay City, Mich., as night yardmaster. The defendant's passenger trains were operated over the

tracks of the Pere Marquette Company from the station called "Foss," about a mile from the passenger station of the Pere Marquette Company, into which station defendant's passenger trains came. Decedent's employment as such yardmaster extended over a period of eight years prior to his death. As yardmaster, decedent had full charge and direction of the movements of all trains, engines, and cars owned or operated by the Pere Marquette Company, and in defendant's brief it is stated that he had charge of those operated by defendant company. But this statement should be taken with limitations. He had nothing to do with the actual operation of the Detroit & Mackinac trains. All he had to do in connection with the trains was to cut off the sleeper, and this was done, because, as stated by a witness, "it then became a Pere Marquette sleeper. In order to give through traffic from the north and carry passengers to Detroit, they would take off the Pere Marquette sleeper and not make the passengers get out." He had nothing to do with the Detroit & Mackinac operators or operatives in doing that. He used his own labor, and the Detroit & Mackinac in no way assisted.

On the evening of June 15th, 1908, while the decedent was engaged in throwing a switch to permit the passage of a Pere Marquette train and standing at the switch between the track of the Pere Marquette and the defendant's track, the defendant's crew, in charge of this engine, backing out without outlook or headlight, on the track next to the switch where decedent was standing, and where, in operating the switch, his person would be brought within striking distance of the engine, came into collision with decedent, and he was killed. The testimony tended to show that the practice and custom of the defendant company and its crew was to have an outlook and lights, and that it was the neglected adherence to this custom which caused the death of plaintiff's intestate.

At the close of the testimony, a motion was made to direct a verdict for the defendant, and it is strenuously

argued in this court that there is no legitimate evidence to sustain the plaintiff's case. We are all agreed, however, that there was sufficient evidence sustaining the plaintiff's theory to carry the case to the jury if that theory is correct as a matter of law.

The plaintiff's theory is that decedent had a right to assume that this work would be conducted by this train crew in the manner in which it had been accustomed to, and that he would receive the warning that had been customary, as defendant's crew knew that decedent's work would require his taking the position which he took on this occasion. The case in this respect presents very much the same questions that were involved in *Fitzpatrick* v. *Railroad Co.*, 149 Mich. 194 (112 N. W. 915), and *Shall* v. *Railway Co.*, 152 Mich. 463 (116 N. W. 432). We think no error was committed in submitting the case to the jury upon the question of fact and law. Nor can it be maintained that the decedent and the defendant's trainmen were fellow-servants. See cases above cited and *Kastl* v. *Railroad Co.*, 114 Mich. 53 (72 N. W. 28).

Numerous errors are assigned upon the admission and rejection of testimony. The first discussed is the refusal of the court to permit the defendant on cross-examination of the witness Tierney to go into the subject of the character of the house he kept. An examination of the record discloses, however, that the question which was propounded was answered. We think no harm resulted from the ruling.

Thomas Kennedy, the engineer of defendant's engine, was sworn as a witness for the defendant, and testified as to the standard rules in force governing the company. On recross-examination he was asked:

"*Q.* Does not Pere Marquette rule 102 say that trains must not be backed over nor across, nor cars cut from an engine or train and run over, a public or highway crossing, unless there is a man on the leading car who at night must display a light?

"*A.* Yes, sir."

He was then asked:

"*Q.* Isn't there the same danger in running an engine back over a crossing at night that there would be in pushing a car over the crossing at night?"

This was objected to by defendant. The answer was permitted, and the witness testified:

"*A.* The forward end of the car would be much further away from the engineer and fireman than the rear of the engine."

While we think the examination might well have been omitted, still we cannot see how harm was done, as the answer given was favorable to defendant.

The next assignment of error discussed was on the cross-examination of Kennedy. As already stated, the decedent was injured while standing between the two tracks of the Pere Marquette and the defendant, operating the switch. The evidence showed that when bending over to turn the switch his body would be about eight or nine inches from the east rail of the track, or so close that the defendant's engine passing along the track would strike him. Upon cross-examination Engineer Kennedy stated that the tender of his engine at the rear projected over the rails about 29 inches, and that the step on the side of the tender projected about 4 inches farther, so that there would be but seven inches between the switch stand and the step. He was then asked:

"*Q.* As you went by? That would not be room for a man to stand and operate the switch, would it?
"*A.* No, sir."

After the answer was taken, it was objected to as incompetent, irrelevant, and immaterial. It was urged in the objection that there was no claim made that the switch was too close to the track. We think this testimony was entirely competent. It was not necessary to aver that the switch was too close to the track. It was a part of the surroundings, and bore upon the question of whether the defendant was prudent in failing to keep a

lookout or light, and warning the operator at the switch. It was one of the risks that the train crew of the defendant knew was likely to be encountered. It was competent to show the exact situation. The negligence charged was not the location of the switch, but the operation of the engine.

The witness Wilkins for the defendant, testified, in answer to the question:

" Where would Mr. Jackson be with reference to the ground that you would go over on engine 23 ?

"*A*. He was perfectly safe."

This answer was stricken out on motion of plaintiff. We think no error was committed. The answer stated a conclusion, and, even though competent, this ground had been fully covered by a description to the jury of the precise position in which Mr. Jackson stood, so that the only office left for this answer to fill was to furnish the witness' opinion as to the safety of the position occupied by Mr. Jackson.

Error is also assigned upon the decision of the court overruling the motion for a new trial made upon the ground that the verdict was against the weight of the testimony. Without reviewing the testimony at length, we are agreed that the case is not so clear for the defendant as to justify the court in substituting our judgment for that of the circuit judge upon the question of whether a new trial should be granted. There was a clear question of fact for the jury.

The case was properly submitted, and the judgment will be affirmed.

OSTRANDER, HOOKER, BLAIR, and STONE, JJ., concurred.