GARDINER v. COURTRIGHT.

1. CONTRACTS—WORK AND LABOR—MASTER AND SERVANT—COMPENSATION.

In an action for services rendered by claimant to defendant under an alleged arrangement, denied by defendant, that they should work together in his hotel, and divide the profits, and in case of his death he would give plaintiff all the property that he should accumulate after the execution of the agreement, a verdict for the value of plaintiff's services on the theory that the contract which she claimed to have made was void under the statute of frauds, was not against the overwhelming weight of the evidence, notwithstanding testimony produced by defendant as to contradictory admissions of plaintiff.

2. APPEAL AND ERROR—NEW TRIAL—WEIGHT OF EVIDENCE.

The court, on writ of error, will only reverse a judgment as against the weight of the evidence when the verdict is against the overwhelming weight thereof.

3. EVIDENCE—ADMISSIONS—IMPEACHMENT.

Alleged contradictory statements of a party, both in and out of court, are for the consideration of the jury.

Error to Newaygo; Sessions, J., presiding. Submitted February 8, 1911. (Docket No. 137.) Decided March 13, 1911.

Assumpsit by Minnie Gardiner against William Courtright for services performed. Judgment for plaintiff. Defendant brings error. Affirmed.

*George Luton* (*Dunham & Phelps*, of counsel), for appellant.

*Crane & Norris* and *Myron H. Walker*, for appellee.

STONE, J. This is an action of assumpsit in which the plaintiff seeks to recover for services performed by her for the defendant during a period of a little more than 25 years, from November, 1883, to March 8, 1909.

It is not disputed that the plaintiff worked for, and was in the employ of, and performed services for, the defendant during the period above stated, and that said services were not gratuitous; or, in other words, it is conceded that they were performed under an agreement and understanding that she should be compensated therefor

It was the claim of the plaintiff at the trial, and she testified, that, when she was about 18 years of age, she entered the employment of the defendant, at the time above stated, and that at the time of her employment, or soon thereafter, there was a distinct understanding and agreement between herself and the defendant as to the terms upon which she should be employed; that it was then agreed between them that she should not work for wages, or upon a salary, but that the defendant and herself would work together, and they would divide equally between them whatever profits should accrue to the defendant, either in money or property; and that if anything should happen to the defendant, meaning thereby that in case of his death while she was employed by him in that way, she should have the whole of the accumulation of his property, excluding the amount of property that he had at that time. She further claimed and testified that it was then agreed between them that she should have an allowance at first of whatever sum of money might be necessary for her clothing and other personal needs and expenses, and later on that the amount of that allowance became fixed by them by agreement. She further claimed and testified that there was an express agreement between the defendant and herself that the amount of her allowance should not be considered as a salary, or as wages, but that such amount should be paid to her purely as an allowance for her personal expenses, and as "pin money," as she claims the parties themselves termed it; that the services which she performed after that time for the defendant were performed under and in accordance with that agreement; that she at no time worked for the defendant under any agreement for wages or salary at a fixed or definite amount; that the

defendant himself acted under that agreement so made by them; and that during the first years of her service there was no agreement as to any fixed amount of her allowance, or the "pin money" that should be paid to her; but that she drew from time to time such an amount as was necessary to pay for her clothing and other personal expenses; that about January 1, 1887, in order to avoid the annoyance of asking the defendant for small amounts of money, they agreed that the amount of her "pin money" allowance should be fixed at $12.50 per month; and that at that time it was agreed that such amount should not be considered as wages or a salary, but should be considered as an allowance for her personal expenses—that is to say, an amount which she was permitted to draw out of the business in order to clothe herself and to pay other personal expenses; that later on the amount of her allowance was increased by agreement, first to the sum of $15 per month, which continued for about two months, and then to the sum of $20 per month until 1903, when the amount of her allowance for her personal expenses was fixed by agreement at $50 per month, and continued at that sum down to the time when the employment ceased.

It is also the claim of plaintiff, and she so testified, that, acting under and in accordance with the agreement made with the defendant, she performed various services for him; that she worked in the kitchen washing dishes; that she worked in the dining room as dining room girl in the Courtright Hotel; that she acted as chambermaid; that she became the housekeeper for the hotel; that she became the clerk and bookkeeper for the hotel, and for other business in which the defendant was interested; that she finally became the general manager of the hotel business, having it principally in charge. The plaintiff claimed also that she kept the books, drew the checks, looked after the depositing of money in the bank; that she also looked after the putting up of ice in the winter time; that she performed services in connection with the livery business which the defendant was at one or more times conduct-

ing; that she also performed services in connection with farms which the defendant owned, and in connection with some timbered lands in Mississippi which he owned; that she looked after the insurance; that she also performed services in connection with certain cottage property of defendant at Hess Lake. In short, it is the claim of the plaintiff that these services were all performed by her under and in accordance with the agreement which she claims that defendant and she entered into at about the time she commenced to work for him, and that she at no time was working for a fixed salary, or working for wages, other than would be implied by the terms of the agreement that she claims she made with the defendant.

On the other hand, the defendant denied at the trial that any such contract as claimed by the plaintiff was ever entered into between himself and the plaintiff. He denied that there was ever any agreement or understanding between himself and the plaintiff that she was to work for him other than for wages. He denied that there was any agreement by the terms of which they were to divide between them the profits of his business. He denied that there was ever any agreement that in case of his death she should have all of the property, provided she was then working for him, and continued to work for him up to that time. He denied that any such contract as claimed by the plaintiff was entered into between himself and the plaintiff. He claimed and testified that the plaintiff during the entire time that she worked for him was working for wages and for a salary, and that during that entire time the amount thereof was fixed and determined by agreement between them. It is his claim that, when she first went to work for him, it was agreed that she should have her board and clothing and such small amounts of money as were necessary for her personal needs, and that that arrangement continued up to the 1st of January, 1887, when it was agreed that she should receive, in addition to her board, lodging, and laundry, the sum of $12.50 per month; that her wages were fixed at

that amount by agreement between them; and that she worked for such wages for several years; that thereafter her wages were raised to the sum of $15 per month for two months, and then to $20 per month; that she continued to work for him for those wages until about January, 1903, at which time her wages were raised to the sum of $50 per month; and that those were the wages which were agreed upon between them; that plaintiff never worked for him under, or in accordance with, any such contract as the plaintiff claims was made by them; and that the only contract was that she was to receive a definite and fixed amount as wages.

Upon the trial it was conceded by both parties that, at the rates claimed by the defendant to have been her wages, the amount of plaintiff's wages during the entire time of her employment was $7,452.50, and that she was paid either as "pin money" or allowance as claimed by her, or as wages as claimed by the defendant, the sum of $5,404.43, and the jury were instructed that if they found that the contention of the defendant was correct, and that plaintiff was working for wages as stated by defendant, that there was a balance due plaintiff at the time of the commencement of the suit of $2,048.07, which with interest to the time of the trial amounted to $2,169.80, which amount the defendant conceded he owed the plaintiff.

The question of what the agreement was, was fairly and fully submitted to the jury, as were also the proper rules relating to the questions of the burden of proof, and preponderance of evidence. Upon the trial it was conceded by counsel for both parties that the contract which the plaintiff claimed was made, being oral, would be void under the statute of frauds, and the jury were so instructed; but they were advised that, if they found that such a contract was actually made by the parties and acted upon, then the plaintiff would be entitled to recover the reasonable value of her services rendered to the defendant, and that, in determining what the reasonable value of her services was, the jury would have a right to

take into consideration the terms of the contract, if found to exist, together with other evidence in the case. There was testimony *pro* and *con* as to the reasonable value of the plaintiff's services. The jury found a verdict for the plaintiff in the sum of $11,765.57. The defendant has brought error.

The only errors assigned relate to the refusal of the circuit judge to set aside the verdict and grant a new trial. The grounds for the motion covered by the assignments of error are:

(1) Because the verdict was manifestly and strongly against the weight of the evidence.

(2) Because the verdict was against the great preponderance of the evidence.

(3) Because the verdict was not supported by the preponderance of the evidence.

(4) Because the jury was influenced by passion, sympathy, and prejudice.

(5) Because the verdict was excessive.

And, finally, that the court erred in the reasons assigned for refusing a new trial.

In view of the assignments of error, it has been necessary for us to read and consider the entire testimony. This we have done. It is too voluminous to refer to at length. The vital question in the case was as to the contract between the parties. Nobody else heard it made. They, and they alone, knew its terms.

Both upon the argument upon the motion for a new trial, and in the oral argument of counsel for appellant at the hearing here, the first three grounds were limited to a discussion of what the contract of hiring was, and it was not denied that the plaintiff's testimony was sufficient to sustain the verdict upon the question of hiring, provided her testimony was worthy of belief. It was, however, claimed that the plaintiff's testimony had been contradicted by a large number of witnesses, who testified to certain admissions claimed to have been made by the plaintiff to third persons. Upon this subject the circuit judge, in stating his reasons for denying the motion, said:

" Some of these third persons were interested because of relationship. The testimony of these witnesses is unsatisfactory, and must have been considered so by the jury. Therefore, so far as the oral testimony in regard to the contract of employment is concerned, it practically rests between the plaintiff and defendant. The counsel for the defendant claimed that the contract of hiring, which the plaintiff claims she made with the defendant, was improbable and unbusinesslike, and that the defendant as a business man would not have made such an unusual and extraordinary contract. It is sufficient to say that the testimony conclusively shows that the relations between these parties were of extraordinary character and unusual. The plaintiff's account on the hotel books under her explanation is not conclusive against her right to recover. These were questions for the jury to determine. It is a very significant fact that, while the plaintiff was in the employ of the defendant, for the last 21 years of her employment she did not at any time draw the entire amount of her wages, if the amounts with which she was credited were to be considered as wages, and, at the time when she was discharged by the defendant, he concedes that he was owing her something over $2,000, which had been accumulated during the last 21 years of her employment. The plaintiff did not draw the amount that was coming to her according to the books. She simply used the amount that was necessary to pay her personal expenses. There was another significant fact which the jury had a right to take into consideration. At the end of each month during the plaintiff's employment a profit and loss statement was made and a balance was struck. That profit and loss statement showed not only the amount of the defendant's property, but also the amount of his indebtedness. In none of these monthly profit and loss statements is there an item of any indebtedness of the defendant to the plaintiff, which for the last 21 years of her employment, if his theory is correct, he was owing to the plaintiff in some amount, which was constantly increasing. The counsel for the defendant, on the argument of the motion, narrowed the first ground of the motion to the contention that the weight of the evidence was in favor of the defendant's version of the contract of hiring and against the plaintiff's version of the contract of hiring. The testimony of the plaintiff and the defendant were in direct conflict in respect to the contract of employment.

There was thus presented to the jury a question of fact upon conflicting evidence, and that question was for the jury. If the testimony of the plaintiff was believed, and the jury had a right to believe it, the contract of employment according to the plaintiff's version was made out. The jury found that the plaintiff's version of the contract was true, and found against the defendant's version of that contract. The verdict was not against the weight of the evidence in the case. The matter was for them to determine, and I see no occasion to interfere with their conclusion in the matter."

Upon the ground of alleged passion, sympathy, and prejudice, the circuit judge found that the jury were intelligent and gave careful attention to the trial of the case; that he saw no indication on their part that they were influenced either by passion, sympathy, or prejudice, or that they arrived at their verdict for any of these reasons; and that there was no basis for setting aside the verdict upon this ground.

Upon the ground of excessive verdict it was conceded by counsel for appellant that there was sufficient evidence to sustain the verdict as to its amount, if there was evidence to sustain the finding of the jury that the contract of hiring was as claimed by the plaintiff. So we are brought back to the question whether or not the verdict was against the weight of evidence. Upon this subject counsel for appellant lays great stress upon the number of witnesses, as to the claimed admissions of the plaintiff. This court has spoken so often upon the subject of preponderance of evidence, and the convincing weight of evidence being generally a question for the jury, that we do not need to do more than refer to some of the cases. *Strand* v. *Railway Co.*, 67 Mich. 380 ( 34 N. W. 712 ); *McIntosh* v. *McIntosh*, 79 Mich. 198 (44 N. W. 592 ); *Hoffman* v. *Loud*, 111 Mich. 156 (69 N. W. 231); *Dupuis* v. *Traction Co.*, 146 Mich. 151 (109 N. W. 413).

The rule is well settled that this court will only reverse a case upon the question of the weight of the evidence when the verdict is against the overwhelming weight of

the evidence. The verdict must be clearly against the great weight of the evidence, to require this court to over-rule the decision of the circuit judge refusing a new trial. This rule has been repeatedly stated by us. *Wheeler* v. *Jenison,* 120 Mich. 422 (79 N. W. 643); *Brennan* v. *O'Brien,* 121 Mich. 491 (80 N. W. 249); *Stevens* v. *Soap Works,* 134 Mich. 350 (96 N. W. 435); *Hintz* v. *Railroad Co.,* 132 Mich. 305 (93 N. W. 634); *Saginaw Milling Co.* v. *Mower,* 154 Mich. 620 (118 N. W. 622); *Malinowski* v. *Railway,* 154 Mich. 104 (117 N. W. 565); *Muir* v. *Corset Co.,* 155 Mich. 624 (119 N. W. 1079); *Jackson* v. *Railway Co.,* 161 Mich. 163 (125 N. W. 763); *Matla* v. *Vehicle Co.,* 160 Mich. 639 (125 N. W. 708); *In re Parr's Estate,* 161 Mich. 244 (126 N. W. 197); *Spray* v. *Ayotte,* 161 Mich. 593 (126 N. W. 630); *In re Hoyles' Estate,* 162 Mich. 275 (127 N. W. 284).

There was a sharp issue between the parties as to the contract. The circuit judge saw and heard these witnesses testify, and had an excellent opportunity to judge of their truthfulness. If the testimony of the plaintiff was believed by the jury—and they had the right to believe it —the contract as claimed by her was proved.

We are of opinion that the circuit judge did not abuse his discretion in refusing a new trial upon the ground that the verdict was against the weight of the evidence.

The claimed contradictory statements of the plaintiff, both in and out of court, were for the consideration of the jury. *King* v. *Lumber Co.,* 93 Mich. 172 (53 N. W. 10); *Pelton* v. *Schmidt,* 104 Mich. 345 (62 N. W. 552, 53 Am. St. Rep. 462). A jury has the right to consider the reasonableness of testimony. *Zart* v. *Sewing Machine Co.,* 162 Mich. 387 (127 N. W. 272). The defendant claimed that the plaintiff had been hired like an ordinary servant. In view of the long term of service of the plaintiff, the nature of the employment, the confidence reposed in her by the defendant, as admitted by him, and the fact that he had made substantial provisions for her in his wills, it is not strange that both the jury and the circuit

judge should be led to the conclusion that "the relations between these parties were of extraordinary character, and unusual."

We find no error in the record, and the judgment of the circuit court is affirmed.

OSTRANDER, C. J., and BIRD, BROOKE, and BLAIR, JJ., concurred.