McGARY *v.* BUICK MOTOR CO.

1. EVIDENCE—MASTER AND SERVANT — PERSONAL INJURIES—NEGLI-
GENCE—ELEVATORS.

It was not erroneous, in a personal injury action, instituted
by an employee against his employer for injuries received
when the freight elevator that carried him tipped up and
caused the materials upon it to fall against him, to re-
ceive evidence of subsequent action of the elevator under
operation, where, during the course of the trial, experi-
ments were made in the presence of the jury to show the
action of the machinery.[1]

2. NEW TRIAL—MOTIONS—PERSONAL INJURIES.

Although the trial judge expressed his views, in denying a
motion for a new trial, that he would have determined
the case in a different manner than the jury decided it,
and that he did not believe that any negligence was made
out, the Supreme Court will not reverse his ruling deny-
ing defendant's motion for a new trial, unless the verdict
is against the overwhelming weight of the evidence.

3. MASTER AND SERVANT—NEGLIGENCE—DEFECTIVE MACHINERY.

Evidence tending to show that defendant's elevator had a
broken shoe or guide which permitted the platform to tilt
and throw the freight against plaintiff, *held*, to present
a question for the jury as to alleged negligence of the
employer.

Error to Genesee; Wisner, J. Submitted April 14,
1914. (Docket No. 33.) Decided October 2, 1914.

Case by Edward McGary against the Buick Motor
Company for personal injuries. Judgment for plain-
tiff. Defendant brings error. Affirmed.

*Austin J. Spaulding* and *Carton, Bray & Stewart,*
for appellant.

*Farley & Selby,* for appellee.

[1] Upon the question of evidence as to conditions before and
after accident, see note in 32 L. R. A. (N. S.) 1093 and 1103.

MOORE, J. In March, 1912, the plaintiff was employed by the defendant to operate a freight elevator in one of its factory buildings. He received injuries, for which he brought this suit. From a judgment in his favor, the case is brought here by writ of error.

The errors assigned are grouped by counsel as follows:

(1) It was error to permit testimony as to the behavior of the elevator after the accident.

(2) The court erred in refusing to grant a new trial.

(3) The court erred in refusing to direct a verdict in favor of the defendant.

The elevator was constructed in the usual manner of freight elevators. It is the claim of plaintiff that he had worked upon the elevator something more than a year without having any trouble; that, about a week before he was injured, the elevator was carrying a truck load of heavy boxes, and, when an attempt was made to run the truck out on the third floor, the elevator tilted, throwing off the boxes, and plaintiff narrowly escaped injury.

It is claimed the millwright found that a metal shoe which acted as a guide was split from top and bottom, and was held in place only by one bolt.

Plaintiff claims, after the boxes were thrown off, he notified the superintendent, who promised to have the trouble remedied at once, and that plaintiff, supposing this had been done, continued to operate the elevator for about a week, when a truck loaded with dashes, making a heavy load, was run up to the third floor, when, in attempting to run the truck off the elevator, it again tilted, throwing the dashes over plaintiff, and injuring him.

The action was defended on the principal ground that the guide shoe in question, whether broken or not, and whether on or off, did have and could have no influence or bearing upon the action of the ele-

vator. It appears that, when the truck was to be run out of the elevator upon the factory floor, two maple boards, five or six inches wide and several feet long, were put under the front wheels of the truck, extending from there out upon the floor of the factory, and it is claimed by the defendant that the breaking of one of these boards was the cause of the accident.

An attempt was made to show by the witness, who ran the elevator after plaintiff was injured, how it acted, and the testimony was excluded.

On the part of the defense, a witness was being examined as to the elevator, when the following occurred:

"*Q.* Now, since you testified before and gave your opinion, have you made any experiment which gave you additional knowledge which you did not have at that time?

"*A.* Yes, sir; I have.

"*Mr. Selby:* I object to that as incompetent.

"*Mr. Farley:* Do you want to go into the testimony as to the new shoe? If that proposition is taken up, we want an opportunity to go into it, too. (Question and answer repeated.)

"*The Court:* That is competent.

"*Mr. Farley:* The proposition, your honor, is, if they propose to show the effect of the putting on of this new shoe, I suppose that will open up the proposition so that we can go into that also, if it is competent for them.

"*The Court:* If they introduce anything now, you have got a right to controvert it; there is not any question about that; but it is certainly competent for him to show whether he has made any experiment which has changed his mind in respect to it in any way.

"*Mr. Selby:* The objection relates to any condition that may exist to the elevator since.

"*The Court:* What say?

"*Mr. Selby:* The objection relates to any conditions which he may have observed in the elevator since that time. You will remember when the question was put to Mr. Eberhardt as to how it acted im-

mediately after the new casting was put on, as compared with its actions before, Mr. Bray objected to the question, and it was ruled out as relating to something that occurred after the accident, and my objection only relates to anything that he may have discovered.

"*The Court:* If that elevator is in the same condition it was before the accident, they can show any experiment that had been made with it to test it; not only that, if they want to, I will send the jury over there to see it. I think they can get a better idea by looking at that elevator than they can by volumes of testimony in regard to how it is constructed, and all about it.

"*Mr. Bray:* I would be very glad to shorten this up and let the jury look at it.

"*The Court:* If you request it—you have given some testimony now tending to show no change has been made in this plank you speak of.

"*Mr. Selby:* Under that condition, will your honor say the testimony of Mr. Eberhardt, as to just the way the elevator acted immediately before, as compared with its condition immediately after, the new casting was put on, would be competent?

"*The Court:* It would be a question for the jury whether it did or not.

"*Mr. Bray:* I did not intend to go into any question of how the elevator itself acted after the new shoe was put on. I only had in mind an experiment that was made for the purpose of testing whether that shoe on or off made any difference with the action of the elevator; that is all.

"*Mr. Farley:* Of course the evidence of Mr. Willis was that there was no plank on there; he did not see any; and he helped take off the casting; that there was no plank on there; that is Mr. Willis' testimony. Of course we don't know that the conditions are the same.

"*The Court:* The witness swears they are—swears every one of those 16 elevators are built the same way with that plank in, just the same way. Now, that is sufficiently broad to show at least a scintilla of evidence that there has not been any change.

"*The Witness:* In the whole 16 there are 2 that have not any plank on.

"*The Court:*  Two out of the 16.

"*The Witness:*  The Morris-Williams type, they don't have any plank.

"*The Court:*  That is a different kind of elevator?

"*The Witness:*  A different kind of elevator.

"*The Court:*  All we want to get at is justice; that is all.  We don't want any technicalities or confusion of witnesses.

"*Mr. Farley:*  I would suggest that if we could also have a truck loaded with 256 dashes, and run it on there into the center of the elevator, and run it off, and see whether it is safe.

"*The Court:*  The proper way to do is to go over there and let the jury inspect the elevator, then put a truck on with this kind of a load on it and with this steel shoe in place, run it up to the floor, and see how much the tilt is when that load is run off, then take it down and take off the steel shoe, and run it up to the same place with the same load on, and see whether there is any difference in the tilt or not.  That is a proper experiment to make, in my judgment.

"*Mr. Farley:*  That would be a very good experiment.

"*The Court:*  Using the running board the same as was used on that occasion.

"*Mr. Bray:*  It may take some little time.

"*The Court:*  We want to get at the justice of this thing.

"*Mr. Bray:*  It may take some little time to prepare this load.

"*Mr. Farley:*  We would rather not have it prepared.

"*The Court:*  It is not necessary to put on a load of dashes.  Put on a load of the same weight; put on some castings that will weigh the same amount.

"*Mr. Bray:*  We will be very glad to do it.  That is the identical experiment I was going to ask him about.  It would please us very much.  That is the identical experiment I was going to ask him about.

"*The Court:*  That is certainly a fair proposition.

"*Mr. Farley:*  I think that is very fair.

"*The Court:*  That is what we will do."

Later, at the request of defendant, plaintiff consenting thereto, the jury were taken to the plant and

the experiments were made. Upon the record as made, we think the testimony was competent.

Groups 2 and 3 may be considered together.

It was the claim of defendant that the metal shoe was bolted to a plank just below it, and that the ends of the plank would fit the guide posts so snugly that the elevator would not tip, even though the metal shoe was broken. The plaintiff claimed that the metal shoe was bolted to an I-beam and not to a plank, and that the tilting occurred because of the broken shoe.

We have already stated the jury were taken to the elevator and saw it operated. At the close of the testimony the following occurred:

"*Mr. Bray:* I would like at this time to renew my motion and ask for instruction, your honor.

"*The Court:* Well, I think I will have to submit it to the jury whether or not the broken casting caused this accident or not.

"*Mr. Bray:* All right. We understand that is practically the only question in the case.

"*The Court:* That is the only question I see now. They have attributed a broken casting as the cause of the injury. Unless the jury can find the broken casting did it, in my judgment the plaintiff has no case, but I am going to submit that to the jury."

The court, after stating the claims of the respective parties, and that, unless the broken shoe caused the injury, there could be no recovery, charged the jury in part as follows:

"I charge you that if you find that the shoe or casting under the floor of the elevator was so broken as to cause the elevator floor to sway, tilt, and sag in an unusual manner and to a dangerous extent, at the point where the loaded truck was being removed, and if you find that such broken casting was the efficient and proximate cause of the loaded truck and dashes being overturned, and that such loaded truck and dashes would not have overturned except for such defective casting, you would then be warranted in finding such defective casting or shoe was the proxi-

mate cause of the injury, even though you may find that one of the running boards placed across the opening between the floor of the elevator and the factory floor may have broken.  *  *  *  You will observe, in this case, that the negligence counted upon by the plaintiff, which the plaintiff claims entitled him to recover, is the broken condition of a casting under the elevator floor; the guide, and his contention is that that contributed to the tipping over of the truck. Now, upon that subject, of course, you will consider all the evidence in the case, the evidence here that below or above that shoe was a wooden plank with a notch in it of practically the same size that is in the casting below. You will consider the testimony given here in respect to that, and will consider the conclusion you may have reached from a personal examination of the elevator yesterday. I stated to all of you (there in the hearing of all of you) that you should make a special examination to determine in substance whether or not that plank bore any evidence of having been recently placed there, or, rather, you should determine whether it was there as long ago as the time that this accident occurred, and if you should find from the evidence, or not be able to say that such was not the fact, that that plank was in position at the time of this accident, and that it would not permit any more swaying of that elevator than would exist under ordinary circumstances, and with a perfect casting there, then, of course, there could be no negligence in respect to that casting that would entitle the plaintiff to recover, because certainly if that shoe (if that wooden shoe) was in existence at the time of the accident, and permitted no more swaying with the casting actually taken off, it would certainly be as serious a defect as to have a broken casting there to have none at all, so, if you should conclude that existed at that time, the plaintiff could not recover, and, in order to recover, you must find that the evidence preponderates in favor of the proposition that that wooden shoe was not there, or, if it was there, that it did permit a swaying.  *  *  *

"Not only that, gentlemen of the jury. There is another proposition. Having considered all of the evidence pro and con in respect to this issue, and the tilting of the elevator, and all that sort of thing, you

then naturally consider the question of this running board that was used as a skid to reach from the elevator to the floor, and, if you should conclude that the breaking of that skid was the proximate cause of that car tipping over and inflicting such injuries as plaintiff has suffered, then the plaintiff cannot recover."

In overruling the motion for a new trial, the court made reference to the fact that the case had been twice tried, and to the expense to the county of the litigation, and said in part:

"Well, the first jury disagreed. It was submitted to a second jury and, I think, fairly submitted. I do not believe the court committed any error, unless it was an error of submitting it to the jury at all. The charge was clearly in favor of the defendant, if the jury paid any attention to it, but they found a verdict. And while the court cannot bring itself to agree with the jury in that respect, for my verdict would have been different under the proofs, yet there is no use of having a jury, if you do not let them judge of the facts. I disagree with them on two grounds: *First*, I do not believe that the Buick Motor Company was guilty of any negligence; and, *second*, I have grave doubts whether the condition of Mr. McGary was at all attributable to the accident he had on that occasion. I am not a medical man, but I have some slight idea of mechanics, and it does not look to be a mechanical proposition that such an injury as he complains of could be attributed to the accident he received there. But I am not the judge of that. There was medical testimony that it might be attributable to such an accident, and the jury found that it was."

In his order overruling the motion for a new trial, the court gave his reasons for doing so in part:

"(5) Because the verdict of the jury is supported by the evidence received on the trial of said cause.

"(6) Because the verdict of the jury is not against the weight of evidence offered and received in the trial of said cause. * * *

"(10) Because the broken shoe or casting, as al-

leged in plaintiff's declaration, and under the proof offered in respect thereby by the plaintiff upon the trial of said cause, was the proximate cause of the accident which resulted in the injury to the plaintiff."

Counsel for appellant lay much stress upon what the trial court said about his own belief of the negligence of defendant, and insist a new trial should have been granted, citing *Nelson* v. *Dutton*, 51 Mich. 416 (16 N. W. 791), and *Krouse* v. *Railway*, 166 Mich. 147 (131 N. W. 548), and other cases cited in brief of counsel. A reference to them will show they are not controlling upon the record made.

The language of Justice STONE is pertinent upon the question whether a verdict should have been directed as well as upon the question of a new trial. We quote from *Gardiner* v. *Courtright*, 165 Mich. 54 (130 N. W. 322):

"So we are brought back to the question whether or not the verdict was against the weight of evidence. Upon this subject counsel for appellant lays great stress upon the number of witnesses, as to the claimed admissions of the plaintiff. This court has spoken so often upon the subject of preponderance of evidence, and the convincing weight of evidence being generally a question for the jury, that we do not need to do more than refer to some of the cases. *Strand* v. *Railway Co.*, 67 Mich. 380 (34 N. W. 712); *McIntosh* v. *McIntosh*, 79 Mich. 198 (44 N. W. 592); *Hoffman* v. *Loud*, 111 Mich. 156 (69 N. W. 231); *Dupuis* v. *Traction Co.*, 146 Mich. 151 (109 N. W. 413).

"The rule is well settled that this court will only reverse a case upon the question of the weight of the evidence when the verdict is against the overwhelming weight of the evidence. The verdict must be clearly against the great weight of the evidence, to require this court to overrule the decision of the circuit judge refusing a new trial. This rule has been repeatedly stated by us. *Wheeler* v. *Jenison*, 120 Mich. 422 (79 N. W. 643); *Brennan* v. *O'Brien*, 121 Mich. 491 (80 N. W. 249); *Stevens* v. *Soap Works*,

134 Mich. 350 (96 N. W. 435); *Hintz* v. *Railroad Co.,* 132 Mich. 305 (93 N. W. 634); *Saginaw Milling Co.* v. *Mower,* 154 Mich. 620 (118 N. W. 622); *Malinowski* v. *Railway,* 154 Mich. 104 (117 N. W. 565); *Muir* v. *Corset Co.,* 155 Mich. 624 (119 N. W. 1079); *Jackson* v. *Railway Co.,* 161 Mich. 163 (125 N. W. 763); *Matla* v. *Vehicle Co.,* 160 Mich. 639 (125 N. W. 708); *In re Parr's Estate,* 161 Mich. 244 (126 N. W. 197); *Spray* v. *Ayotte,* 161 Mich. 593 (126 N. W. 630); *In re Hoyles' Estate,* 162 Mich. 275 (127 N. W. 284)."

See, also, *Fike* v. *Railroad Co.,* 174 Mich. 208 (140 N. W. 572); *Druck* v. *Lime Co.,* 177 Mich. 364 (143 N. W. 59).

In the instant case there was a sharp conflict in the testimony as to some of the material issues. At the request of the defendant, the jury were taken to the plant and saw the elevator in operation. The judge in his charge, as already appears, suggested:

"I stated to all of you (there in the hearing of all of you) that you should make a special examination to determine in substance whether or not that plank bore any evidence of having been recently placed there, or, rather, you should determine whether it was there as long ago as the time that this accident occurred, and if you should find from the evidence, or not be able to say that such was not the fact, that that plank was in position at the time of this accident, and that it would not permit any more swaying of that elevator than would exist under ordinary circumstances, and with a perfect casting there, then of course there could be no negligence in respect to that casting that would entitle the plaintiff to recover."

We think it cannot be said upon this record there was no case for a jury.

Judgment is affirmed.

MCALVAY, C. J., and BROOKE, KUHN, STONE, OSTRANDER, BIRD, and STEERE, JJ., concurred.