DEAN, ADMINISTRATRIX, *v.* THE CLEVELAND, CIN-
CINNATI, CHICAGO AND ST. LOUIS RAILWAY
COMPANY.

[No. 9,223.  Filed February 23, 1917.  Rehearing denied May 16,
1917.  Transfer denied June 29, 1917.]

1. RAILROADS.—*Injury to Licensee.—Duty of Railroad Company.*
—In an action against a railroad company for wrongful death, where the evidence shows that the railroad in switching cars in the yards about an elevator had knowledge that it was customary for the elevator company's employes, in going from one building to another, to cross the switch tracks between cars standing thereon, the railroad was under a duty to use reasonable care in switching its cars to avoid injuring such employes and its failure to do so is actionable negligence.  (*Lake Erie,*

*etc., R. Co.* v. *Gaughan* [1900], 26 Ind. App. 1, overruled.) pp. 231, 232.

2. RAILROADS.—*Injury to Licensee.—Duty of Railroad Company. —Negligence. — Contributory Negligence. — Jury Question. —* Where a railroad company switched cars in a yard about an elevator with knowledge that workmen employed at the elevator, in going from one building to another, frequently passed over the switching tracks between cars standing thereon, and an elevator employe was crushed and killed between two cars which the railroad's switching crew moved without warning, it was a question for the jury whether the railroad's duty to exercise reasonable care had been discharged and whether in passing between the cars decedent was guilty of contributory negligence.   p. 231.

3. NEGLIGENCE.—*Imputed Negligence.—Employer and Employe.* —Where a railroad company switched cars in an elevator yard with knowledge that it was customary for workmen employed at the elevator, in going from one building to another, to pass between cars standing on the tracks, though it may have been the duty of the elevator company to warn its employes of the danger of passing between cars, its failure to do so would not excuse the negligence of the railroad company.   p. 231.

4. TRIAL.—*Directing Verdict.*—Questions of fact must be submitted to the jury for its determination whenever the evidence furnishes reasonable grounds for inferring the facts essential to a recovery and it is only where there is a total absence of some substantial evidence upon an essential issue or when there is no conflict and the evidence is susceptible of but one inference and that favorable to the party asking for a peremptory instruction that such an instruction shall be given.   p. 232.

From Sullivan Circuit Court; *William H. Bridwell,* Judge.

Action by Sarah Dean, administratrix of the estate of William H. Dean, deceased, against The Cleveland, Cincinnati, Chicago and St. Louis Railway Company. From a judgment for defendant, the plaintiff appeals. *Reversed.*

*A. L. Miller, Harry S. Wallace* and *Orion B. Harris,* for appellant.

*Beasley, Douthitt, Crawford & Beasley* and *Hays & Hays,* for appellee.

IBACH, P. J.—An action to recover for the death of William H. Dean, alleged to have been caused by appellee's negligence. The complaint proceeds upon the theory that appellee was negligent in operating an engine and cars on a certain sidetrack and switch at the plant of the Vigo Elevator Company near Terre Haute, Indiana, where decedent was working when injured.

At the close of appellant's evidence appellee moved for a peremptory instruction, which motion was sustained; the jury was directed to return a verdict for appellee, and this was done. Appellant's motion for a new trial challenging the ruling of the trial court in directing the verdict is the sole error assigned.

The buildings and yards of the Vigo Elevator Company are located between appellee's railroad and other railroads and are connected with such railroads by a number of switch tracks. These railroad companies delivered cars into the yards of the elevator company and over separate tracks for the accommodation of each.

In delivering the cars into the yards they would simply place them on their particular tracks and afterwards they were located as desired by the elevator company by a switch engine and switching crew. Cars that were to be unloaded in the main building were brought up to the north end of the unloading track and were placed on the unloading track as directed by the representative of the elevator company having that work in charge. They were usually placed near the north end of the building and were afterwards drawn into the building by means of a cable operated by the employes of the elevator company. At other times the cars were pushed into the building by the same switch engine used for bringing the cars to the unloading track. There was sufficient room on this track within the main building for two cars and no more. Whether

the loaded cars were pulled into the building by the cable or pushed in by the engine, when they were brought in they would shove out of the south side of the building any empty cars that at the time were within the building on the same unloading track.  As these empties were not attached to an engine they would simply roll out of the building only so far as the momentum received from the contact with the incoming cars would send them.  When they stopped these empties would sometimes come together and sometimes they would be left standing with open spaces between them.  The switching crew referred to did all their work in the elevator yards and had nothing to do with transferring cars between the yards and the different railroads.  When the switching crew was ready to place the loaded cars brought into the yards they would so notify the elevator company, and they would then place them as directed.  The several tracks used by this crew were constructed by appellee for the elevator company, and the switch engine was one of appellee's engines and the members of the switching crew were in the employ of appellee.  About eleven o'clock in the morning of the day of the accident there had been two empty cars standing on the unloading track at the south end of the main building.  They were coupled together. One of them was entirely without the building, the other partly so.  South of these two cars there were other empties standing on the same track.  The yards of the elevator company were spacious, many buildings composing its plant and all separated by the various switch tracks.  Decedent for several weeks before his death had charge of the repair work about the elevator company's plant and was also employed in installing new machinery, and his work required him to visit the several buildings frequently, and in doing so he was required to and did pass over the various switch tracks

and over and between cars standing thereon. When there were openings between the cars it was customary for the workmen generally to pass back and forth over the tracks and between the cars standing thereon and this fact was known to the members of the switching crew. On the day Dean was killed the switching crew pushed the loaded cars into the building and against the two cars standing there, and when they were set in motion they closed up the space between them and other empties next to them to the south, and caught decedent as he was passing through such open space, and this was done without any notice or warning first being given or without any one guarding the open spaces between such cars. There seems to be some slight variance in the evidence, but the statement we here have made is a fair abstract of all the evidence bearing upon the question involved.

It is insisted that the court erred in directing the verdict because there was some evidence to establish every material averment of the complaint necessary to a recovery. On the other hand appellee contends that the evidence fails to show any legal duty resting upon the employes who performed the work complained of to protect the decedent from injury, but that it does show that the work of switching the cars was done in the yards of the elevator company and under its direct orders and control, and if the evidence did show that the switching crew was negligent in handling the particular cars causing the injury, their negligence could not be imputed to appellee because there was no competent evidence to show that such crew were servants of appellee. Upon this last proposition the evidence clearly shows that the appellee company is usually called the "Big Four." Witness Bean testified that the switch engine was a Big Four engine. In his examination he was asked the question: "Q. Do you know in

whose employ Duddleston and Fleming and this crew were? A. Yes sir. Q. In whose employ were they? A. New York Central Lines. Q. What is that company usually called there in Terre Haute in whose employ they were? A. Usually goes by the name of Big Four." Without going further into the particular questions and answers on this branch of the case, it is sufficient to say that there was other evidence of the same character that would fully support the inference that at the time of the doing of the acts complained of the servants operating the engine and moving the cars were the servants of appellee.

It is fair also to state that a jury trying the cause would have a perfect right to conclude from the evidence that the elevator company did not direct, advise, or control the manner of switching any of the cars in its yards, but that the way of doing it was left to appellee's servants alone. The elevator company alone made the selection of the location where the particular car or cars were to be placed in its plant, and gave the order to switch them to such location. Thus far and no farther does the evidence show any control of the elevator company over the men employed in the work of switching.

We pass to the question as to whether the facts show that there was any legal duty resting upon appellee's servants who performed the acts complained of to protect the decedent from injury. The report of the evidence hereinbefore set out discloses that there was some evidence that appellee's agents and servants knew, or should have known, of the custom and habit of the employes of the elevator company to use the opening left between the cars as a passage way for them in going to and from different parts of its plant long before the cars in question were shoved against the cars which came together crushing the decedent. They

knew, or should have known, that if cars were shoved together in the manner in which they were then engaged in performing that part of their work in the elevator company's yards, the laborers employed by that company would not know that the spaces between the standing cars and through which they were passing would be closed unless they had warning or notice from some one. There is evidence, and it seems to be conceded, that no notice or warning was given by appellee's servants to decedent of the movement of the switch engine and cars, and there is no evidence that he received any notice of any kind from any other source.

It seems to us that the facts of this case necessitate the application of the well-recognized principle of law, that a duty may arise out of a known situation 1. or condition, and that a violation of that duty may result in actionable negligence. This is the same principle which has been so fully considered by this court in the cases of *Tippecanoe Loan, etc., Co.* v. *Cleveland, etc., R. Co.* (1914), 57 Ind. App. 644, 104 N. E. 866, 106 N. E. 739; *Belt R., etc., Co.* v. *McClain* (1914), 58 Ind. App. 171, 106 N. E. 742; *Cleveland, etc., R. Co.* v. *Means* (1915), 59 Ind. App. 383, 104 N. E. 785, 108 N. E. 375, as to require no further discussion here.

The facts presented by the record show a duty owing by appellee to the decedent to exercise reasonable care to avoid injuring him, and it was a question for 2. the jury, under proper instructions, whether such duty had been discharged. Contributory negligence was likewise a question for the jury.

Appellee, however, claims that it was the duty of the elevator company to give warning and notice of danger to its employes in view of the conditions and circumstances 3. as then existed. If it be conceded that such duty did exist on the part of such com-

pany, its failure to perform that duty will not excuse or exonerate appellee for failure to perform its duty towards the injured party. *Jacowicz* v. *Delaware, etc., R. Co.* (1914), 87 N. J. Law 273, 92 Atl. 946, Ann. Cas. 1916B 1222.

In all cases such as the present questions of fact must be submitted to the jury for its determination whenever the evidence furnishes reasonable grounds for inferring the facts essential to a recovery, and it is only where there is a total absence of some substantial evidence upon an essential issue or when there is no conflict and the evidence is susceptible of but one inference and that inference favorable to the party asking for a peremptory instruction that such an instruction should be given. *Abelman* v. *Haehnel* (1914), 57 Ind. App. 15, 103 N. E. 869; *Lyons* v. *City of New Albany* (1913), 54 Ind. App. 416, 103 N. E. 20, and cases cited.

Appellee apparently relies very strongly on the case of *Lake Erie, etc., R. Co.* v. *Gaughan* (1900), 26 Ind. App. 1, 58 N. E. 1072. In many respects that case is distinguishable from the facts of the present case; but in so far as such case is in conflict with this opinion it is overruled. In so holding we are but following the later and better-reasoned authorities upon such question. *Prest-O-Lite Co.* v. *Skeel* (1914), 182 Ind. 593, 106 N. E. 365; *Marion Shoe Co.* v. *Eppley* (1913), 181 Ind. 219, 104 N. E. 65, Ann. Cas. 1916D 220; *Fitzpatrick* v. *Michigan Central R. Co.* (1907), 149 Mich. 194, 112 N. W. 915; 1 Labatt, Master and Servant §§25, 66.

Judgment reversed, with instructions to sustain appellant's motion for a new trial and for further proceedings not in conflict with this opinion.

Note.—Reported in 115 N. E. 92. Railroads: duty of, to persons, other than trespassers, on or near its track, 59 Am. Rep. 27, 20 Am. St. 453. See under (2) 33 Cyc 897.