MUSLINER *v.* DETROIT UNITED RAILWAY.

1. WITNESSES—CROSS-EXAMINATION—APPEAL AND ERROR..

In an action by an interurban car passenger for personal injuries received while attempting to board one of defendant's cars, it was proper to cross-examine the claim agent of defendant as to his purpose in gathering statements from witnesses of the accident for the purpose of showing that the statements made by him were as favorable to the company as possible where the only reference to an attempt to settle the case was made by defendant itself.

2. STREET RAILWAYS — PERSONAL INJURIES — EVIDENCE — SUFFICIENCY.

In an action by an interurban car passenger for personal injuries sustained while attempting to board one of defendant's cars, *held,* that the evidence was sufficient to sustain a verdict for plaintiff.

3. DAMAGES — PERSONAL INJURIES — EXCESSIVE VERDICT — PERMANENT INJURY.

A verdict for $3,500 for personal injuries in favor of a traveling man for permanent injury to one of his legs due to the fracture of both bones thereof, financial loss of $1,774 and confined to the hospital for upwards of six weeks, was not excessive.[1]

Error to Wayne; Hosmer, J. Submitted June 18, 1917. (Docket No. 76.) Decided July 26, 1917.

Case by Louis S. Musliner against the Detroit United Railway for personal injuries. Judgment for plaintiff. Defendant brings error. Affirmed.

*Corliss, Leete & Moody* (*Frederick T. Harward,* of counsel), for appellant.

*Lodge & Brown,* for appellee.

[1]On excessiveness of verdicts in actions for personal injuries other than death, see note in L. R. A. 1915F, 30.

KUHN, C. J. The plaintiff, a commercial traveler 50 years of age, on April 27, 1913, was injured while attempting to board a car of the defendant company at the intersection of Woodward and Gladstone avenues in the city of Detroit. It is his claim that an interurban car going south came to the place where he was standing and stopped, that he put his right foot upon the step, took hold of the handle of the car, and that thereupon the car started, causing him to fall in such a way that he landed upon his left foot breaking his left leg below the knee. It is the contention of the defendant, which also found support in the evidence, that the car did not come to a stop, but that plaintiff attempted to board it while it was moving. The disputed questions of fact were submitted to the jury, who found for the plaintiff, and rendered a verdict in the sum of $3,500 damages. A motion for a new trial was made on the ground that the verdict was against the weight of the evidence, and that it was excessive. The denial of this motion is made the ground of assignments of error.

The second, third, fourth, and fifth assignments of error relate to the testimony of Joseph Mason, a claim agent of the defendant company, who was put upon the stand by the defendant to prove the signed statement of Philip S. Beamer, one of plaintiff's witnesses. The following transpired upon the cross-examination of Mr. Mason:

"I worked for the Detroit United Railway for six or seven years; employed in the claim department all the time. Part of my duty was to go out and get these statements. The rest of my duty was adjusting claims and investigating and all work connected with claims.

"*Q.* There is a department down there that is devoted entirely to the business of settling up claims arising out of what are claimed to be the negligence or carelessness of the employees of the Detroit United Railway, is that right?

"*A.* Yes, sir.

"*Q.* And your business is there partly to adjust and arrange with people who have been injured through what they claim at least to be the carelessness and negligence of employees of the railroad, is that right?

"*A.* Yes, sir.

"*Q.* Now, then, you did get so far—part of your duties were, so far as you could, get the people to agree on the sum for which they would settle, is that right? (Objected to.)

"*The Court:* I think that is competent.    (Exception.)

"*A.* In certain cases; yes, sir.

"*Q.* And the other part was to get a statement similar to this, is that right?

"*A.* To make investigations; yes, sir. I get the names of the people to see and get their statements from the list of names that are turned in by conductors and motormen; that is the general way.

"*Q.* Would it be your duty afterwards to settle claims where you had taken statements?

"*A.* Oftentimes.

"*Q.* And I presume in making a statement it was your duty to get as low a settlement as you could, wasn't it?    (Objected to.    Incompetent, irrelevant, and immaterial.)

"*A.* It all depends upon the circumstances of the case.

"*Mr. Harward:* He is trying to inveigle in here that he was up there to see about settling this case, and that is improper.

"*Mr. Lodge:* That is not my purpose.

"*The Court:* Go ahead.

"*Q.* I presume in making settlements you make use of your statements, do you not, that you had taken? (Objected to as incompetent, irrelevant, and immaterial.)

"*The Court:* Answer the question.    Note an exception.

"*A.* Those statements, of course, govern the liability, and my purpose in making the statement or getting the statement was to get whatever bears upon the liability of the company.

"*Q.* You in no case acted as an attorney for a man who was injured, did you?

"*A.* I was not any attorney, anyway.

"*Q.* I say, you in no way acted in his interest? You were acting in the interest of the company that employed you?

"*A.* Well, I worked for the company; yes, sir. Why, I have informed certain claimants of the investigations and what the investigations showed.

"*Q.* Sure; that is where you were making a settlement, wasn't it?

"*A.* In talking it over; yes, sir.

"*Q.* And you would tell him what it showed when it showed that there was no liability, wasn't that it?

"*A.* Well, it all depended on the case.

"*Q.* But, in other words, you used these statements to show the claimant either that there was no liability, or that he was not so badly injured as he claimed; in other words, you used the statement to help you to get a low settlement, didn't you? (Objected to.)

"*The Court:* Answer the question. Note an exception.

"*A.* The statements were used to find out all the facts regarding the case, and, of course, where investigation was made, why, your settlement was generally based upon the outcome of your investigation."

It is urged that this cross-examination was prejudicial because it is claimed that the evident purpose of the questioning was to intimate to the jury that Mr. Mason was endeavoring to settle the case at bar. In this we cannot agree with counsel because the only reference to an attempt to settle the case in question was made by counsel for appellant. The witness had testified before any objection was made as to what his duties were, and we think that the examination of the witness was entirely competent for the purpose of showing that the statements which he took were made as favorable as possible to the defendant, which purpose is disclosed by the questions asked.

There was a sharp conflict in the evidence between the witnesses of the plaintiff and the employees of the defendant company. Plaintiff's theory of the case, however, finds support in the testimony of witness

Beamer, who at the time was driving an automobile at the rear of the car in question, and who testified that it was his impression that the car had stopped, or apparently stopped, at the time the plaintiff attempted to get on. We are not satisfied that the verdict was so against the weight of the evidence as to justify us in finding that the learned trial judge erred in refusing to set it aside on that ground. See *Gardiner* v. *Courtright,* 165 Mich. 54 (130 N. W. 322), and cases there cited.

Neither are we of the opinion that the verdict was excessive. Plaintiff proved undisputed financial loss of $1,774. He suffered a fracture of both bones of the leg, and was confined to the hospital for upwards of six weeks. Dr. McAlpin, the surgeon who attended him, said:

"This man's leg will never be in the same condition as it was before he was injured. It is a permanent injury."

Considering this testimony and his pain and suffering, in addition to the financial loss that he proved, we are not prepared to say that the verdict is excessive.

We are unable to find any error in the record, and the judgment should be, and is hereby affirmed.

STONE, OSTRANDER, BIRD, MOORE, STEERE, BROOKE, and FELLOWS, JJ., concurred.