O'DELL *v.* STRAITH.

1. TRIAL—REQUESTS TO CHARGE COVERED BY GENERAL CHARGE.
    Where the substance of requests to charge was given in the general charge, there was no error in refusing such requests.

2. SAME—EVIDENCE—ARCHITECTS—CONTRACTS—CONVERSATION WITH DISINTERESTED PARTY.
    In an action by a firm of architects for services in preparing plans and specifications for the construction of a
    208—Mich.—32.

building which was never erected because of difficulty in financing same, testimony of defendant as to an interview with a former member of plaintiff firm, who is not a party to the suit, in so far as it related to the terms of the contract which was afterwards entered into, *held*, properly stricken out.

3. SAME—WITHDRAWAL OF QUESTION—CURING ERROR.

Asking a question of defendant's wife, on cross-examination, as to whether she had given the matter a great deal of thought during the past week in order to help win the case for her husband, which was withdrawn, on objection, *held*, not reversible error.

4. SAME—COMPROMISE VERDICT—VERDICT FOR LESS THAN AMOUNT ASKED.

Where plaintiffs sued for $6,000 and offered testimony that their services were worth that sum, but they had rendered a bill to the defendant of $3,000, a verdict for $2,500 cannot be said to be a compromise verdict, there being nothing to indicate that the jury did any "splitting of differences."

5. APPEAL AND ERROR—TRIAL—DEFENDANT CANNOT COMPLAIN OF SMALLNESS OF VERDICT.

That the verdict was less than the evidence would have justified, is a matter of which defendant cannot complain.

6. SAME—NEW TRIAL—GREAT WEIGHT OF EVIDENCE.

It is only where the verdict is clearly against the great weight of the evidence that the Supreme Court will overrule the trial court and grant a new trial.

Error to Wayne; Dingeman (Harry J.), J. Submitted October 22, 1919. (Docket No. 120.) Decided December 23, 1919.

Assumpsit by Henry A. O'Dell and Dewey Halpin, copartners as Baxter, O'Dell & Halpin, against Samuel Straith for services rendered. Judgment for plaintiffs. Defendant brings error. Affirmed.

*Paul W. Voorhies* and *Philip H. Robinson*, for appellant.

*John McNeil Burns* (*Arthur P. Hicks*, of counsel), for appellees.

STONE, J. This case was brought here by the defendant, by writ of error, to review a judgment for the plaintiffs of $2,500. The plaintiffs were architects in the city of Detroit, and it was their claim that in September, 1916, they were verbally employed by the defendant to prepare plans and specifications, and receive bids for the erection of a certain apartment building to be erected on Hancock avenue, in said city, the construction of which they were to superintend; that in pursuance of such employment, they prepared the plans and specifications for the building, and received bids which were submitted to the defendant, and approved by him; and that on or about April 7, 1917, the defendant notified the plaintiffs that, because of the unsettled conditions growing out of the war between this country and Germany, he had decided not to go on with the building. The plaintiffs, in this suit, sought to recover what they claimed was the reasonable value of the services which were rendered by them in connection with their employment.

On the other hand, the defendant, while admitting that he employed plaintiffs to prepare the plans and specifications, claimed that it was a part of the agreement that the plaintiffs were to arrange for the financing of the construction of the building; that this was a material part of the agreement, and that without it the defendant would not have entered into the contract with the plaintiffs; that the plaintiffs did make efforts to finance the building, but were unsuccessful; that after several unsuccessful efforts to consummate some arrangement for financing the building the plaintiffs announced that they were through, or words to that effect; and it was the claim of the defendant that, because of the failure of the plaintiffs to carry out this phase of the agreement, the contract was not performed, and that plaintiffs were not entitled to recover any compensation for their services; and that the con-

tract was an entire contract, the material feature of which was the agreement of the plaintiffs to finance the construction of the proposed building.

Upon the trial the plaintiffs admitted that they made some efforts to assist the defendant to finance the construction of the building, but they claimed that their efforts in that direction were purely voluntary, and made simply with the desire on their part to see the project carried out, and that they were not obligated, under the terms of the agreement, to do anything in connection with the financing of the project.

Thus was presented to the jury a square issue of fact, and the principal issue in the case. It should also be stated that upon the trial plaintiffs claimed that by their contract with the defendant they were to be paid the regular fees of the American Institute of Architects, and that under the rules of that institute there is a regular and established charge of three per cent. of the estimated cost of the building to cover the work done by architects, including the preparation of the plans and specifications and the taking of bids; in other words, covering all the preliminary work to be done up to the time of the beginning of the actual construction of the building; and that inasmuch as all of this work had actually been done they were therefore entitled to the full three per cent. of the estimated cost of the building, or $6,000, and that was the amount claimed in the amended declaration.

There was lengthy testimony produced by the plaintiffs upon the subject of the amount of time spent and labor bestowed in the preparation of the plans and specifications, and in the receiving of bids. There was evidence that the amount of the total bids received by plaintiffs, and approved by the defendant, was $218,-890.20, which did not include a refrigerating plant.

There was also testimony on behalf of the plaintiffs of one John M. Donaldson, an experienced architect

who had practiced his profession in Detroit for 35 years, that the value of services such as the plaintiffs claimed they had performed in preparing plans and specifications and receiving of bids, and not including superintendence of building, would be 3½ per cent. of the total bids received; and that for such services, including full superintendence of construction, the reasonable charges would be 6 per cent.

The plaintiffs further gave testimony that the arrangement that was made between themselves and the defendant was that they were to be paid the regular fees of the American Institute of Architects, and that would be 3 per cent. or $6,000. It, however, appeared in evidence that on June 5, 1917, the plaintiffs had rendered a bill to defendant for services rendered, $3,000. This bill was accompanied by a letter which reads as follows:

"BAXTER, O'DELL & HALPIN, Architects,
"1024-5-6 Hammond Building,
"Detroit, Michigan.

"June 5, 1917.

"DR. S. STRAITH,
"1461 David Whitney Bldg.,
"Detroit, Michigan.

"*Dear Sir:* We enclose herewith our bill for services rendered in connection with your building for the Hancock avenue lot.

"In accordance with our agreement, we are entitled to a commission of three per cent. on the estimated cost of the work, but as you have decided not to proceed at this time, we are glad to make the minimum charge. If at a later date you decide to go ahead with the building, we shall be pleased to apply this amount on the charges for same.

"We trust that this arrangement will meet with your approval and beg to remain,

"Yours very truly,
"DH:O. Encl.      BAXTER, O'DELL & HALPIN."

The defendant testified that the first conversation which he had looking to the making of such a contract

was with Mr. Baxter, who at least had been a member of the firm. The defendant testified that in such conversation he was encouraged to go ahead with the project and enter into the contract with the plaintiffs. The defendant testified that Mr. Baxter, with whom he had had a former acquaintance, represented that he was of the firm of Baxter, O'Dell & Halpin, the defendant testifying as follows:

"I recognized him as Mr. Baxter, and then the name —I connected the name with him, and asked him if he was of the firm of Baxter, O'Dell & Halpin. He said he was."

He further testified that he had conversation with Mr. Baxter and showed him some plans which had been prepared by a Mr. Hunter, but which were never adopted; and he claims that the situation was talked over and the lot was mentioned. He further testified:

"I told him that I had bought the lot on contract, that I owed $10,000 on it, and that I had besides that, equities to the amount of about $10,000 in land contracts that I could put into the building, and that was all that I did have. 'Well,' he says, 'that's easy.' But before going into the room, while speaking of it in a general way, he says, 'You ought to be able to build on that, that is easy, if you have got that lot.' Then I told him that I had these resources. 'Why,' he says, 'that is easy.' 'Well,' I says, 'if it is easy, I wish you would get somebody at it, for I have been unsuccessful.' 'Well,' he said, 'I am not in the active work in the office, but I'll put this up to the boys, and I'll have one of them come and see you.' * * *

"There was no other conversation that I recollect on that day between myself and Mr. Baxter in relation to this proposed transaction. Later on, I saw Mr. Halpin about the matter. I should judge about three weeks after that, three or four weeks after that, I called to see Mr. Halpin at his office."

There was no claim on the part of the defendant that Mr. Baxter ever had anything further to do in the matter. The defendant in this testimony was in

part corroborated by a young woman, who was assisting him in his office, by the name of Edna Hirt, who subsequently married and bore the name at the time of the trial of Edna Hirt Sannar.

There was direct testimony on the part of the plaintiffs that Baxter had not been a member of the firm for three or four years.

In the cross-examination of Mrs. Straith, the wife of the defendant, who had testified to certain interviews between the defendant and Mr. Halpin, one of the plaintiffs, at Mr. Halpin's office, the following occurred:

"*Mr. Burns: Q.* And you have given the matter, of course, a great deal of thought during the past week while the case has been on for trial, trying to recall such details as you could, in order to help win the case for your husband?

"*Mr. Voorhies:* Now, just a minute; I object to the form of the question.

"*The Court:* The form of the question is objectionable.

"*Mr. Burns:* I will withdraw the question.

"*Mr. Voorhies:* Just a minute; I ask an exception to the remark of counsel.

"*The Court:* Note an exception.

"*Mr. Burns:* Well, what else would she be testifying for, if it wasn't for that purpose? Certainly not to help us.

"*Mr. Voorhies:* Well, go ahead."

At the close of all the testimony plaintiffs' counsel made a motion in the following language, and the following colloquy occurred:

"*Mr. Hicks:* There is just one motion that I want to make at this time, and that is that all the testimony of conversations between Mr. Baxter and the defendant which has any tendency to show that a contract was made between them at that time, be stricken from the record, on the ground that it's undisputed in this case that at that time Mr. Baxter was not connected with the firm of Baxter, O'Dell & Halpin.

"*The Court:* Well, I am inclined to think there is a lack of proof here to show that he had authority, that he was a member of the firm, and that he had authority to act for them; while he undoubtedly did voluntarily—or did offer to have Mr. Halpin come and see Dr. Straith, after all, I don't think that that would be sufficient to bind the firm as to any arrangement that might have been talked between Dr. Straith and Mr. Baxter; because there is positive proof here that he was not actively connected with the firm, as I remember it, he was engaged in looking after some real estate holdings that he had.

"There is positive testimony that he was not a member of the firm, this suit is brought by O'Dell & Halpin, and I think Mr. Halpin said in answer to Mr. Voorhies' question that it was something like three or four years since Mr. Baxter was connected with the firm.

"Well, I think I'll strike out that testimony, that is, the testimony with reference to any arrangement between Mr. Baxter and Dr. Straith as to the preparation of these plans and the financing of the building. I'll let the testimony stand in so far as it shows how these parties were brought together; but as to the arrangement that was talked of between Dr. Straith and Mr. Baxter, I think I will eliminate that from the record.

"*Defendant's Attorney:* That is, if I understand your honor's ruling, the testimony is stricken out as to his contract relationships.

"*The Court:* As to any attempt to make a contract between Mr. Baxter and Dr. Straith.

"*Defendant's Attorney:* And it is only admitted for introductory preliminary purposes?

"*The Court:* Preliminary, to show—

"*Defendant's Attorney:* And the contract is the one that was made between Dr. Straith and Mr. Halpin?

"*The Court:* Yes.

"*Defendant's Attorney:* An exception, please."

The following requests on the part of the defendant to instruct the jury were refused by the court:

"(6) I charge you, gentlemen of the jury, that in order to warrant you in finding for the plaintiff in this

matter, you must unanimously find that they have established by a fair preponderance of the evidence all of the material elements of their claim.

"(7) If the plaintiffs in this case have in any feature failed to establish any one of the material elements of their theory of the case, then you should find for the defendant and your verdict should be no cause of action."

The charge of the court very fully, and, we think, fairly presented the issues in the case. After discussing the rule as to the burden of proof, the court said:

"Therefore, it follows that the plaintiffs, to entitle them to a verdict, must establish all of the material elements of their claim by such evidence as outweighs, in the minds of each of you, that given against it. * * *

"Now, the first question that presents itself then for your determination is, What was the contract between these parties? Was it as the plaintiffs claim, a contract by which the plaintiffs were employed to perform services as his architects, which called for the drafting of plans and specifications and receiving bids and estimates, or was it, as the defendant claims, a contract which also obligated the plaintiffs to arrange for the financing of the project? If you find that the contract was as claimed by the plaintiffs, then the plaintiffs are entitled to your verdict. If, on the other hand, you find that the plaintiffs did undertake to arrange for the financing of the project, as claimed by the defendant, then your verdict would be for the defendant. * * *

"In determining what the agreement actually was, which these parties made between themselves, you must reach your conclusions from the evidence submitted to you in this case."

After the verdict and judgment were entered, the defendant made a motion for a new trial for the following reasons:

Because the court erred in refusing to give each of the requests above set forth; because the verdict of

the jury was not justified by any of the evidence; because the verdict of the jury is, on the face of it, a compromise verdict; because the court erred in striking out the testimony with reference to arrangements between Mr. Baxter and the defendant in relation to preparation of plans and financing the building; because of prejudicial and inflammatory remarks of counsel and unwarranted insinuations made by counsel while examining Mrs. Straith, as above set forth; and, finally, because the verdict of the jury was against the weight of the evidence.

In the denial of the motion for a new trial the learned circuit judge stated that the 6th and 7th requests to charge were covered by the general charge of the court, and that there was no merit in that part of the motion. The circuit judge further said:

"All of the parties agree that no fixed compensation for plaintiffs' services was agreed upon between them. If entitled to a verdict, plaintiffs would be entitled to recover the fair and reasonable value of the services which they performed. This was admitted by the defendant and was embodied in defendant's eighth request. It was within the province of the jury to determine the value of the services, and in awarding a less sum than that fixed by the experts, the jury was squarely within its province under the circumstances of this case.

"Complaint is made because the court struck from the record the testimony with reference to defendant's talk with Mr. Baxter. Assuming that there was sufficient proof of Baxter's authority to act for the plaintiffs, an examination of the testimony stricken from the record will disclose that it could not have affected the result. In substance, it amounted to nothing more than a promise by Baxter to have one of the plaintiffs talk over the matter with defendant. No claim was made of any contract with Baxter.

"There was nothing in the remarks of plaintiff's counsel about which complaint is made, to influence the jury in their verdict.

"The verdict is not against the weight of the evidence. To hold otherwise would be to establish a rule that because the defendant produced two witnesses to the contract, as against one for the plaintiffs, that the jury are bound by defendant's testimony. The case presented a square issue of fact, which was resolved in favor of the plaintiffs and for which there is ample basis in the evidence.

"The motion for a new trial is denied without costs."

Exception was duly filed to the refusal to grant the motion for a new trial and the reasons therefor. The assignments of error cover the same subjects as those embraced in the motion for a new trial, together with the further assignment: That the court erred in denying defendant's motion for a new trial, and in all its reasons for such denial.

We will consider the questions presented in the order of the discussion of them by appellant's counsel.

1. Refusal of the court to give the 6th and 7th requests to charge. An examination of this record satisfies us that there is no merit in this assignment of error. We have never held that requests to charge must be given in their exact language. In that part of the charge which we have quoted, we think it distinctly appears that the substance of these requests was given, and therefore it may be said that they were embraced in the general charge of the court.

2. Was it prejudicial error for the court to strike out the testimony of the defendant as to the interview with Mr. Baxter, as indicated by the ruling of the court. We are constrained to answer this question in the negative, for the reasons stated by the learned circuit judge in disposing of the motion for a new trial. Further, Mr. Baxter was not a party to this suit. It may be said that the undisputed direct testimony shows that he had not been a member of the plaintiffs' firm for three or four years before the trial, which time antedated the making of the contract, whenever it was.

No claim is made that any bargain or agreement was entered into with Mr. Baxter. At the most, all that is claimed is that he said he would send the plaintiffs to see the defendant. The defendant's own testimony is that the only bargain or agreement that was ever made in the case was made with the plaintiff Halpin. We see no prejudicial error in the ruling.

3. Was there anything occurring in the cross-examination of Mrs. Straith which should reverse this case. We think not. Counsel for appellant call our attention to the ruling of this court in *Lumbert* v. *Prince*, 203 Mich. 242. The cases are readily distinguished. There counsel said to the witness: "What a liar you are." The court said: "Of course, gentlemen, you are supposed to give no attention to a remark of that kind; sometimes remarks come when we cannot avoid it." Which defendant's counsel supplemented with the exclamation: "For a man to sit there and tell me that!"

Here, when objection was made, counsel for appellees very promptly, upon the suggestion that the question was improper, withdrew it. To the last remark of appellees' counsel, counsel for appellant made no objection, but said: "Well, go ahead." The dissimilarity between the instant case and the case cited by counsel for appellant is so great that we refrain from discussing the question further, but call attention to the language of this court and the collection of authorities in the recent case of *Fishleigh* v. *Railway*, 205 Mich. 145.

4. The fourth point urged, and upon which error is assigned, is that the verdict was a compromise verdict. Unless we are to say that in every instance in which a jury renders a verdict for a less sum than is claimed by the plaintiff the verdict is a compromise, there is no reason for us to hold in this case that this verdict was a compromise verdict. It is true that the plain-

tiffs sued to recover the sum of $6,000, and offered testimony tending to show that their services were worth that sum. It appeared, however, during the trial of the case, that the plaintiffs had rendered a bill to the defendant of $3,000, and we cannot say that the jury acted unreasonably or improperly in cutting the plaintiffs' claim down to $2,500. We think it is a matter of which the defendant cannot complain— that the judgment was too small. There is nothing here to indicate that the jury did any "splitting of differences." See *Crawl* v. *Dancer,* 180 Mich. 607.

5. The claim that the verdict was against the great weight of the evidence was submitted to the trial judge in the motion for a new trial. We have quoted his language in denying it. It is only in a clear case that this court will overrule the judgment of the trial court upon the question of the weight of the evidence. We have so recently, and so often, spoken upon this subject that we do not care to cite authorities. See, however, *Druck* v. *Antrim Lime Co.,* 177 Mich. 364, 374; *Pachuczynski* v. *Railway,* 202 Mich. 594. We do not think there is any merit in the question. The evidence was all before the jury; they had all the facts. There was a sharp issue between the plaintiffs on the one hand and the defendant on the other. The jury passed upon this issue under a full and fair charge of the court, and we cannot say, upon examination of this record with care, that the verdict was against the great weight of the evidence.

There was no error in the denial of the motion for a new trial; and, in our opinion, there is no prejudicial error in the record, and the judgment of the court below is affirmed.

BIRD, C. J., and SHARPE, MOORE, STEERE, BROOKE, FELLOWS, and KUHN, JJ., concurred.