NICHOLS *v.* GRAND TRUNK WESTERN RAILWAY CO.

1. TRIAL—CONFLICTING EVIDENCE TO GO TO JURY.
   Where there is a sharp conflict of testimony upon every important question of fact, the trial judge should not usurp the functions of the jury and direct a verdict for either party.

2. RAILROADS—PERSONAL INJURIES—QUESTION FOR JURY.
   In an action against a railroad company for personal injuries received by plaintiff when his automobile was struck at a public crossing by defendant's locomotive, evidence *held*, to present questions of fact for the jury.

3. APPEAL AND ERROR—NEW TRIAL—GREAT WEIGHT OF EVIDENCE.
   It is only where the verdict is clearly against the great weight of the evidence that the Supreme Court will overrule the trial court and grant a new trial.
   BROOKE and CLARK, JJ., dissenting.

Error to Cass; Des Voignes (L. Burget), J. Submitted January 14, 1920. (Docket No. 72.) Decided February 27, 1920.

Case by Sylvester N. Nichols against the Grand Trunk Western Railway Company for personal injuries. Judgment for plaintiff. Defendant brings error. Affirmed.

*Harrison Geer* (*H. R. Martin*, of counsel), for appellant.

*Walter C. Jones* and *Thomas J. Cavanaugh*, for appellee.

MOORE, C. J. This is a personal injury case growing out of a collision between an automobile owned by the plaintiff in which he was riding, and defendant's locomotive. He was quite severely hurt. He recovered a substantial judgment and the case is brought

here by writ of error. The wife of the plaintiff was injured in the same accident. She sued and recovered a judgment which was affirmed in this court and is reported in 203 Mich. 372.

It is the claim of the plaintiff that his son was driving the automobile of the plaintiff in which the plaintiff and his wife were seated; that they were going south on Center street where they stopped and an east-bound freight train passed. It is further claimed that after listening and looking the automobile was started across the track and that almost instantly thereafter it was struck by a train consisting of a locomotive, tender and caboose running as a special at 30 miles an hour without ringing its bell or blowing a whistle.

It is the claim of the defendant that the driver of the automobile was guilty of contributory negligence as a matter of law; that the train was running at a lawful rate of speed, and that the proper signals of the approach of the train to the crossing were given. At the close of all the testimony the court was asked in writing to direct a verdict in favor of the defendant. The trial judge declined to do this and submitted the case to the jury in a charge covering more than 20 pages of the printed record. The jury returned a verdict in favor of the plaintiff in the sum of $2,800, upon which judgment was entered. The defendant then moved for a new trial which motion was overruled, and the defendant has brought the case here for review.

It is the claim of plaintiff that the case now presented is more favorable for the plaintiff than was the case of Ida Nichols against this defendant, *supra,* and that the judgment in this case should be affirmed. Counsel for defendant says this record is quite different from the record in the former case and that the judgment should be reversed.

Counsel says that the facts are materially different from the facts contained in the *Ida Nichols Case,*

"and I will proceed to state why they are different. Fred Forsythe and Henry Truesdale were examined as witnesses in the *Ida Nichols Case,* but were not examined as witnesses on the trial of the present case, nor is there anything contained in this record to show why they were not produced as witnesses.   If the testimony that was given by the above named witnesses in any way induced the result of the decision in the *Ida Nichols Case,* certainly that testimony cannot be taken into consideration in disposing of this case on the present record.   To that extent there is a difference between the records in the two cases."

Counsel then analyzes the testimony of the witnesses to show he is right in his contention.   We again quote from the brief:

"When you come to compare and consider the question whether the giving of the signals by the engineer on the train that collided with the automobile, with the testimony offered on the part of the defendant with relation to the giving of these signals, I confidently submit the testimony is overwhelmingly in favor of the defendant.   This testimony certainly is no defense to our contention that the great weight of the evidence is in favor of the defendant that the statutory signals were given at or near the defendant's station.   See the names of the witnesses who testified to the giving of the signals, ten in all, I think, who testified positively that the statutory signals were given at or near the depot.   If the court reaches the conclusion that the testimony of the plaintiff and his witnesses was sufficient to carry the case to the jury, still, we insist on this record that the testimony is overwhelmingly in favor of the defendant that the statutory signals were properly given at or near the defendant's station."

Counsel discusses at length the testimony as to the location of the car on the siding which is said to have obstructed the view of the occupants of the automobile.   We again quote from the brief:

"As to the location of this car at the time of the collision, I submit with the greatest confidence that on this record this court must reach the conclusion that the testimony of the defendant overwhelmingly outweighs the testimony offered on the part of the plaintiff, and some besides. This question was not and could not have been considered in the *Ida Nichols Case*, because there was no proof in that record in relation to how cars were placed upon and taken off the mill track. *    *    *

"In the trial of this *Ida Nichols Case*, I did not suppose the box car standing on the mill track would be considered, except as an obstruction to one about to cross the railroad tracks, the same as though it had been a permanent structure. I thought this case controlled by the *Sanford Case* [190 Mich. 390]. I thought the only question that would be considered by this court would be, Was the driver of the automobile guilty of negligence in driving 18 or 19 feet with a clear view to the east after passing the box car where he could see an approaching engine for 1,000 feet? Not until after the decision in the *Ida Nichols Case* was handed down, did I suppose this court would hold that the driver of the automobile was or might be in danger of the box car backing up, if he had stopped his automobile while passing over the mill or sidetrack.

"To overcome this inference, on this trial, we have made full and complete proofs, showing that all cars placed upon this mill track had to be put in from the west end, and that all cars that were taken off this mill track, the engine would go in on the west end of the mill track and remove loaded or empty cars from this mill track. With these full and complete proofs in this record and no such proofs in the *Ida Nichols Case* having been made, we claim that this case should be disposed of on this record, and not controlled in any way by the *Ida Nichols Case*. The proofs in this case demonstrate to a certainty, that the driver of the automobile was in no way in danger from the car that was standing upon the mill track backing up."

This argument overlooks the fact that there is nothing in the record to show that the driver of the car

knew that the siding did not connect with the main track at each end of the siding.

Counsel discusses at great length the testimony as to the location of the tracks, the obstructions to the view and the opportunities of the driver of the automobile to see an approaching train.   We again quote from the brief:

"On my oral argument, I called the court's attention to the testimony of the new witness, Day, who was produced for the purpose of corroborating the testimony of the plaintiff that the statutory signals were not given and the crossing bells were not rung just before the collision took place.   This witness testified that he drove up on the north side of the Conklin mill, got his grist and then drove west from the mill to Center street, which is shown by the testimony of Reynolds, the engineer, to be about 100 feet   *   *   * After Day arrived on Center street he turned south and drove somewhere between 40 and 50 feet before he arrived at the sidetrack in question, during all the time he was driving west from the mill to Center street, and then south on Center street until after the collision, Day neither saw plaintiff nor did Nichols, the plaintiff, see him so far as this record discloses. Day states he drove his team onto the north main track, when his team took fright, as he states, by seeing the approaching train from the east down by the sawmill, the exact distance from Center street not being shown."   *   *   *

"Just as I got on the track I observed an engine or train coming from the east.   It was then down the track somewheres by the sawmill, that is east; I call it east, anyway.

"Q. Did that train blow any whistle?

"A. Did not.

"Q. Ring any bell?

"A. No.

"Q. Were there any crossing bells ringing?

"A. Not when I was there.   *   *   * When I got on the railroad track I looked around and seen that engine coming and I looked around to see if there was anybody behind me, and I seen a car back there.

When I first discovered a train, I was right on the railroad track. This engine at that time was down the road, east, I call it, down toward the station. This engine that was approaching from the east at that time was somewheres along in there by the sawmill, or might have been a little east of the sawmill. It was right in there somewheres. It wouldn't be ahead of me, between me and the station. I don't know how many feet from me, I never measured it. A man could guess at it, but no use guessing at it. Sure I got across the track ahead of the engine. *   *   * Sure I succeeded in getting across both tracks. Before the car got there, I had gone south when the car came along and collided, about half a block, I guess.   *   *   *

"Q. I don't know as you spoke about the bell?

"A. No.

"Q. You didn't pay any attention to that?

"A. I didn't hear none, I said.

"Q. That is as far as you would state?

"A. No, I said it wasn't ringing.

"Q. You mean on that engine?

"A. Wasn't no bell ringing at all nowheres as I could hear of.

"Q. Well, wasn't you a little frightened?

"A. No, I wasn't scared; the horses was scared. I did not see any person around the cars there, anywheres. I didn't even know who it was that was in the automobile behind me. I didn't even see the accident, I didn't really see it, only as I heard the noise when they came together. I wasn't very far away from them. I could not have been, because I hadn't been over a half a block when the accident occurred, when the collision occurred. That is my recollection. I was not examined on the other trial."

"After his team came onto Center street, he did not drive more than 50 or 75 feet at the outside before he discovered the engine coming from the east. We ask, Where was Nichols, the driver of the automobile? If what Day says is true, Nichols, the driver of the automobile was only a short distance behind him, while he was driving the 50 to 75 feet south to the track. *   *   * If this testimony of Day's is true, it conclusively shows that the driver of the automobile never

stopped 10 feet north of the sidetrack to let the
way-freight cross Center street, before he attempted
to drive across.  The testimony of Day, if accepted as
being true, only aids in demonstrating to a certainty
that the testimony of Nichols, the plaintiff, in rela-
tion to his having stopped for the local freight to pull
across Center street is not true."

Counsel for the appellee insist that when all of Mr.
Day's testimony is read it not only tends to show that
no bell was rung or whistle blown, but is corrobora-
tive of the fact that plaintiff's driver had stopped,
looked and listened "when I got on the railroad track
I looked around and seen that engine coming and I
looked around to see if there was anybody behind me
and I seen a car back there."

Counsel concludes his supplemental brief:

"I submit on this record, it 'is the duty of this court
to set aside` the judgment:

*"First:*  Because the evidence clearly discloses that
the defendant discharged its duty by the giving of the
statutory signals and the ringing of the crossing bells,
and

*"Second:*  The evidence clearly demonstrates and
shows that the driver of the automobile was guilty of
contributory negligence.

"If however, the court does not agree with my con-
tention, then I submit the judgment is contrary to the
great and overwhelming weight of the evidence, and
should be set aside."

Counsel has been so insistent in his contention
that defendant should have a directed verdict that we
have taken unusual care to read all of this voluminous
record.  In the case of *Ida Nichols* v. *Railway Co.,*
*supra,* there were 16 witnesses sworn on the part of
the plaintiff, and in this case there were 20 sworn. In
the former case there were 11 witnesses sworn on the
part of the defendant, while in the instant case there
were 15 sworn in its behalf.  In the trial of this case

it is evident counsel on each side tried their case with even more care than was done in the trial of the *Ida Nichols Case*. In each trial there was a sharp conflict of testimony upon every important question of fact. Unless the judge is to usurp the functions of the jury he could not direct a verdict for either party.

The remaining question for consideration is, Should the verdict and judgment be set aside because against the weight of the testimony? The trial judge who heard and saw the witnesses expressed himself when he overruled the motion for a new trial that the verdict was not against the weight of the testimony. In the recent case of *O'Dell* v. *Straith*, 208 Mich. 497, Justice STONE, speaking for the court, said:

"It is only in a clear case that this court will overrule the judgment of the trial court upon the question of the weight of the evidence."

See *Gardiner* v. *Courtright*, 165 Mich. 54; *Fike* v. *Railroad Co.*, 174 Mich. 167; *Druck* v. *Antrim Lime Co.*, 177 Mich. 364, and *Pachuczynski* v. *Railway*, 202 Mich. 594.

The judgment is affirmed, with costs to the plaintiff.

STEERE, FELLOWS, STONE, BIRD, and SHARPE, JJ., concurred with MOORE, C. J.

BROOKE, J. I adhere to my views as expressed in *Nichols* v. *Railway Co.*, 203 Mich. 372. The judgment should be reversed.

CLARK, J., concurred with BROOKE, J.